**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

WHEELER PEAK, LLC
an Illinois limited liability company,

        Plaintiff,

vs.                                                             No. CIV 07-1117 JB/WDS

L.C.I.2, INC., a New Mexico Corporation,

        Defendant.

L.C.I.2, INC., a New Mexico Corporation,

        Counterclaimant,

vs.

WHEELER PEAK, LLC, an Illinois
limited liability company, KMG, INC.
an Illinois Corporation, and KEITH GILES, an individual,

        Counter-Defendants.

L.C.I.2, INC., a New Mexico Corporation,

        Third-Party Plaintiff,

vs.

DONNER PLUMBING AND HEATING, INC.;
JC CONSTRUCTORS, INC., and DE LA
TORRE ARCHITECTS, P.A., A.I.A.,

        Third-Party Defendants.

**MEMORANDUM OPINION AND ORDER**

        **THIS MATTER** comes before the Court on LCI2's Second Motion for Leave to Amend its Third-Party Complaint, filed May 8, 2008 (Doc. 36)("Motion to Amend"). The Court held a hearing

on June 13, 2008. The primary issue is whether the Court should grant Defendant, Counterclaimant, and Third-Party Plaintiff LCI2, Inc. leave to amend its Third-Party Complaint against Third-Party Defendant de la Torre Architects, P.A., A.I.A, or whether such an amendment would be futile because New Mexico does not recognize any potential cause of action that LCI2 might assert against de la Torre. Because New Mexico would not apply the economic-loss rule to the situation of a general contractor bringing a lawsuit against an architect without privity of contract, the Court will allow LCI2 to amend its Third-Party Complaint to assert negligence claims. The Court will also allow LCI2 to assert a claim for indemnification. The Court will not, however, allow LCI2 to amend its Third-Party Complaint to include causes of action for breach of warranty, contribution, or comparative negligence. Accordingly, the Court will grant in part and deny in part the Motion to Amend.

## FACTUAL BACKGROUND

Plaintiff Wheeler Peak, LLC, engaged LCI2, a general contractor, to construct three condominium buildings in the Kachina Village Subdivision in Taos Ski Valley, New Mexico. This litigation arises out of that project going sour. Wheeler Peak alleges that LCI2 failed to substantially complete the three buildings on time, and that construction flaws resulted in significant water and fire damage to the buildings. See Complaint for Breach of Contract, Breach of Warranty, Negligence and Unfair Practices ¶¶ 6-24, at 2-5, filed November 6, 2007 (Doc. 1)("Complaint").

LCI2 had contracted with a number of subcontractors to complete portions of the project. Additionally, according to LCI2, Wheeler Peak had hired de la Torre to design the condominium buildings, and LCI2's agreement with Wheeler Peak obligated it to follow those designs. See Motion to Amend at 5; Exhibit A to Motion to Amend (Doc. 36)("Contract"). LCI2 alleges that de la Torre's faulty design proximately caused many – if not all – of the various delays and damages

for which Wheeler Peak is suing LCI2. See id. at 2.

## PROCEDURAL BACKGROUND

The relevant background on this Motion to Amend is complicated. In addition to answering Wheeler Peak's Complaint, LCI2 filed a Third-Party Complaint against two of its subcontractors on the project, and against de la Torre. See Answer to Complaint for Breach of Contract, Breach of Warranty, Negligence and Unfair Practices at 12-19, "Third Party Complaint for Damages for Indemnity; Comparative Indemnity; Declaratory Relief; Equitable Indemnity and Contribution Against Donner Plumbing and Heating, Inc.," filed January 15, 2008 (Doc. 5)("Third-Party Complaint"). De la Torre moved to dismiss the Third-Party Complaint against it. See Motion to Dismiss Third Party Complaint, filed March 14, 2008 (Doc. 17). The Court held a hearing on that motion on April 29, 2008. That same day, LCI2 moved for leave to amend its Third-Party Complaint against de la Torre. See LCI2's Motion for Leave to Amend Third-Party Complaint Against de la Torre Architects, P.A., A.I.A., filed April 29, 2008 (Doc. 31). The Court granted the motion to dismiss and dismissed the Third-Party Complaint without prejudice to amend, giving LCI2 ten days to file a motion to amend. In light of the Court's rulings at the hearing, LCI2 filed the present motion and withdrew its initial motion to amend. See Motion to Withdraw Third-Party Plaintiff, LCI2's Original Motion for Leave to Amend its Third-Party Complaint at 2, filed May 16, 2008 (Doc. 42). The Court held a hearing on this new motion on June 13, 2008. After the June hearing, the Court issued a memorandum opinion and order more thoroughly explaining its earlier dismissal of the complaint, as well as its decision to allow LCI2 to file a new motion for leave to amend. See Memorandum Opinion and Order, entered July 5, 2008 (Doc. 57)("Memo.").

LCI2 seeks to amend its Third-Party Complaint to assert six causes of action against de la Torre. See Motion to Amend at 15-30 ("Proposed Amended Complaint"). Specifically, LCI2

wishes to bring claims for: (i) professional negligence, see id. ¶¶ 40-49, at 9-10; (ii) negligent misrepresentation, see id. ¶¶ 50-54, at 10-11; (iii) comparative fault or comparative negligence, see id. ¶¶ 55-57, at 11; (iv) breach of implied warranties, see id. ¶¶ 58-61, at 11-12; (v) equitable indemnity, see id. ¶¶ 62-66, at 12-13; and (vi) contribution, see id. ¶¶ 67-68, at 13.

LCI2 notes that the Federal Rules of Civil Procedure take a liberal line on amendments to pleadings, and that courts "should freely give leave when justice so requires." Motion to Amend at 3 (quoting Fed. R. Civ. P. 15(a)(2)). LCI2 argues that de la Torre is a required and indispensable party to this litigation and that any judgment rendered without de la Torre's presence would "unduly and unavoidably prejudice LCI2." Motion to Amend at 4.

LCI2 also argues that its proposed amendments would not be futile. LCI2 contends that its contract with Wheeler Peak required LCI2 to follow de la Torre's plans, and that therefore privity of contract between LCI2 and de la Torre is not required. See id. at 5. LCI2 also maintains that there is case law holding that a contractor can bring a negligence action against an architect without privity of contract. See id. at 6-9. According to LCI2, the New Mexico cases upon which de la Torre relied in its motion to dismiss were inapposite, as they dealt with products-liability issues. See id. at 9.

De la Torre counters that the Court should not grant leave to amend because any amendment would be futile. According to de la Torre, "economic losses in commercial settings in New Mexico may only be recovered in contract actions." Response in Opposition to Third Party Plaintiff LCI2's Second Motion for Leave to Amend its Third-Party Complaint, filed May 12, 2008 (Doc. 39)("Response"). De la Torre maintains that the economic-loss rule bars LCI2 from bringing a tort action against them. See id. at 4. De la Torre also contends that, under New Mexico law, LCI2 could not be liable to Wheeler Peak for any losses resulting from following the plans de la Torre

drafted and thus there is no basis for indemnity. See id. at 4-5. They argue that LCI2's prospective claims for breach of implied warranty and for contribution are also unsustainable because, respectively, implied warranty requires a contractual relationship and contribution applies only in joint-and-several liability scenarios, neither of which are present. See id. at 5.

In reply, LCI2 points out that de la Torre continues to rely on New Mexico case law that is, according to LCI2, not relevant to this case. See Third-Party Plaintiff, LCI2, Inc.'s Reply to Opposition to LCI2's Second Motion for Leave to Amend its Third-Party Complaint at 2-3, filed May 22, 2008 (Doc. 43)("Reply"). LCI2 contends that the New Mexico cases de la Torre cites for the proposition that LCI2 cannot be held liable to Wheeler Peak are similarly inapposite, as they involve wrongful-death or personal-injury lawsuits. See id. at 4-5.

At the hearing, LCI2 conceded that it had no contract with de la Torre and therefore could not bring a claim for breach-of-implied warranty against them. See Transcript of June 13, 2008 Hearing at 14:7-12 (Court, Boothby)("Tr.").[1] LCI2 also conceded that, under New Mexico law, contribution was not available for negligent torts, and thus would not be a cause of action where the theory of liability was negligence. See id. at 14:16-22. De la Torre maintained that most of the proposed counts should not be allowed, but conceded that LCI2's claim for professional negligence was viable if the economic-loss rule were not applied. See Tr. at 19:17-18 (Perovich).

Following the hearing, LCI2 supplemented its briefs and argument with new information based on "just discovered documents." LCI2, Inc.'s Supplemental Reply to de la Torre's Opposition to LCI2 Second Motion for Leave to Amend its Third-Party Complaint, filed June 16, 2008 (Doc. 54)("Supplemental Reply"). According to LCI2, relevant documents – including a contract between

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Wheeler Peak and de la Torre containing an indemnity clause – were first made available to LCI2 at the June 13, 2008 hearing.  See id. ¶¶ 1-3, at 2.  The contract states that the "Architect shall indemnify, defend, and hold harmless the Owner . . . [and] the Owner's . . . separate contractors . . . from and against all claims, damages, losses, and expenses . . . resulting from the Architect's acts or omissions."  Exhibit 1 to Supplemental Reply, Standard Form Agreement Between Owner and Architect § 1.4.2.1, executed August 16, 2004 (Doc. 54)("Architect's Agreement").  The agreement also states: "Architect shall indemnify, defend, and hold harmless the Owner . . . [and] the Owner's . . . separate contractors . . . from and against all claims, damages, losses, and expenses . . . resulting from the Architect's breach of this Agreement."  Id. § 1.4.2.2.

## RELEVANT LAW ON AMENDING A COMPLAINT

"Federal Rule of Civil Procedure 15(a) states that leave to amend 'shall be freely given when justice so requires.'"  B.T. ex rel. G.T. v. Santa Fe Pub. Sch., 2007 WL 1306814 at * 2 (D.N.M.)(Browning, J.)(quoting  Fed. R. Civ. P. 15(a)).  In accordance with rule 15(a), leave to amend should be granted absent a legitimate reason, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  Foman v. Davis, 371 U.S. 178, 182 (1962).  The United States Court of Appeals for the Tenth Circuit has emphasized that "[t]he purpose of [rule 15(a)] is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"  Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006)(quoting Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir. 1982)).

## NEW MEXICO LAW ON THE ECONOMIC-LOSS RULE

Utah International, Inc. v. Caterpillar Tractor, Co., 108 N.M. 539, 775 P.2d 741 (Ct.App.

1989), was the first case in which New Mexico applied the economic-loss rule. The plaintiff had purchased a coal hauler from the defendant, the manufacturer of the coal hauler. During operation, a hose on the "coal hauler ruptured and sprayed hydraulic fluid onto hot surfaces in the engine. The fluid ignited, causing a fire and damaging the coal hauler." Id. at 541, 775 P.2d at 743. The plaintiff sued the manufacturer "under both negligence and strict liability for the fire, because it was caused by defective design and manufacture of an unreasonably dangerous coal hauler." Id. The New Mexico Court of Appeals held that the economic-loss rule barred the claim. See id. at 542, 775 P.2d at 744. The Court of Appeals held:

> [I]n commercial transactions, when there is no great disparity in bargaining power of the parties, economic losses from injury of a product to itself are not recoverable in tort actions; damages for such economic losses in commercial settings in New Mexico may only be recovered in contract actions. We so hold in order to allow commercial parties to freely contract and allocate the risk of defective products as they wish. The buyer may bargain for additional warranties from the seller and pay a higher price, or may forego warranty protection entirely in order to obtain a lower purchase price. Insurance against economic loss is readily available to the party who wishes to acquire it, and in a commercial setting we believe insurance provides adequate protection to the party who suffers a loss from injury of a product to itself.

Id. (citation omitted).

Amrep Southwest, Inc. v. Shollenbarger Wood Treating, Inc. (In re Consolidated Vista Hills Retaining Wall Litigation), 119 N.M. 542, 893 P.2d 438 (1995)(hereinafter "Shollenbarger"), was the next case to address the economic-loss rule. In Shollenbarger, a home builder brought suit against a supplier of pressure-treated wood for retaining walls. The builder did not have a contract with the supplier, but rather had a contract with a company that purchased wood from the supplier. See id. at 544-45, 893 P.2d at 440-41. Although the plaintiff urged the Supreme Court of New Mexico to overrule Utah International, Inc. v. Caterpillar Tractor, Co., the Supreme Court declined to do so. See id. at 550, 893 P.2d at 446. The Supreme Court stated it would retain the rule

> to preserve the bedrock principle that contract damages be limited to those within the contemplation and control of the parties in framing their agreement. The law of contract allows parties to bargain and allocate the risk that the product will self-destruct. As a matter of policy, the parties should not be allowed to use tort law to alter or avoid the bargain struck in the contract. The law of contract provides an adequate remedy. If we overrule Utah International, contract law would be subsumed by strict liability and negligence. In order to preserve the line between contract law and tort law, we decline to overrule Utah International.

Shollenbarger, 119 N.M. at 550, 893 P.2d at 446 (internal quotation marks and citations omitted). The Supreme Court went on to hold the economic-loss rule inapplicable to indemnity claims. The Supreme Court held that the rule was not meant to prevent recovery, but to prevent recovery in tort, and "it would be unjust not to allow indemnification." Id. at 551, 893 P.2d at 447.

## **ANALYSIS**

The primary issue here is whether it would be futile to allow LCI2 to amend its Third-Party Complaint against de la Torre because LCI2 cannot assert any cause of action that would be recognized under New Mexico law. De la Torre specifically argues that there is no cause of action available here for: (i) negligence; (ii) breach of implied warranty; (iii) indemnification; or (iv) contribution. During the hearing, de la Torre also argued that comparative negligence was inappropriate. The Court has already discussed the issue of negligence to an extent in the context of its memorandum opinion and order dismissing LCI2's initial Third-Party Complaint against Torre Architects. The Court clarifies, however, that it appears that New Mexico law would recognize a negligence cause of action by a general contractor against an architect in a construction project, despite a lack of privity of contract, and also concludes that the Supreme Court of New Mexico would not apply the economic-loss rule to a case such as this. Additionally, the Court will allow LCI2 to plead indemnification as an alternative theory for relief. The Court will not allow LCI2 to plead any other causes of action. Accordingly, the Court will grant the Motion to Amend in part and

permit LCI2 to file an amended Third-Party Complaint against de la Torre, but will also deny the Motion to Amend in part and not allow LCI2 to assert causes of action for breach of warranty, comparative negligence, or contribution.[2]

## I. THE COURT WILL ALLOW LCI2 TO AMEND ITS COMPLAINT TO ASSERT NEGLIGENCE CAUSES OF ACTION AGAINST DE LA TORRE.

LCI2 wishes to assert two claims against de la Torre sounding in negligence: (i) one claim for professional negligence (Count Three of its Proposed Amended Complaint); and (ii) one claim for negligent misrepresentation (Count Four of its Proposed Amended Complaint). The Court's prior opinion dismissing the original Third-Party Complaint suggested that a lack of privity of contract between LCI2 and de la Torre was not grounds for dismissal. See Memo. at 13. De la Torre has not raised the issue of privity of contract in its opposition to the Motion to Amend, but instead contends that the related economic-loss rule precludes LCI2 from bringing a negligence action.[3] See Response at 2.

New Mexico's economic-loss rule provides that: "in commercial transactions, when there is no great disparity in bargaining power of the parties . . . economic losses from injury of a product to itself are not recoverable in tort actions; damages for such economic losses in commercial settings in New Mexico may only be recovered in contract actions." Utah International, Inc. v. Caterpillar

---

[2] Because the Court is allowing LCI2 to implead de la Torre, the Court need not rule on LCI2's argument that de la Torre is an indispensable party.

[3] Courts appear to have often, though not always, treated the issue of privity of contract and the application of the economic-loss rule as closely related, if not identical, questions. This link between the two doctrines is probably a result of the principle that, without privity of contract, "there is no . . . duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things." PROSSER & KEETON ON TORTS § 92, at 657 (5th ed. 1984). Despite this principle, where privity of contract exists, the economic-loss rule might operate most noticeably, by limiting a plaintiff to contract remedies. The two questions thus appear to the Court to be distinct, even if they are interrelated.

Tractor, Co., 108 N.M. at 542, 775 P.2d at 744. While the Supreme Court of New Mexico has endorsed the economic-loss rule, see Shollenbarger, 119 N.M. at 550, 893 P.2d at 446, the contours of the rule are uncertain, and there is no New Mexico case on point dealing with the present circumstances.

Utah International, Inc. v. Caterpillar Tractor, Co. involved a direct and limited application of the economic-loss rule. The plaintiff had a contract with the defendant, and sued the defendant for damages that a coal hauler caused when hydraulic fluid from a ruptured hose ignited and damaged the hauler. See 108 N.M. at 541, 775 P.2d at 743. The New Mexico Court of Appeals held that the economic-loss rule barred the claim. See id. at 542, 775 P.2d at 744. Shollenbarger concerned a builder's lawsuit against a supplier of pressure-treated wood for retaining walls. The supplier was not in a contract with the builder, but was a further link up in the chain of distribution from the party with which the builder contracted. See 119 N.M. at 544-45, 893 P.2d at 440-41. The Supreme Court declined to eliminate the economic-loss rule, but did not directly address the rule's application as the lower court's ruling had not been appealed. See id. at 550, 893 P.2d at 446. Instead, the issue on appeal was whether the economic-loss rule applied to indemnity claims. The Supreme Court held that it did not, because the rule was not meant to prevent recovery, but to prevent recovery in tort, and "it would be unjust not to allow indemnification." Id. at 551, 893 P.2d at 447. There is thus no clear authority whether the rule would apply, outside the products-liability area, to claims of negligence in the construction context when there is no privity of contract. The role of the Court, then, is to predict what the Supreme Court of New Mexico would hold if presented with this issue. See Wade v. Emcasco Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007).

De la Torre argues that the economic-loss rule bars LCI2 from recovering in tort damages for purely economic loss, and that LCI2 can seek only contract remedies – even if no such remedies

-10-

are available. See Response at 3 (citing 2314 Lincoln Park West Condominium Assoc. v. Mann, 555 N.E.2d 346 (Ill. 1990)). LCI2 urges the Court to find that the economic-loss rule in New Mexico is limited to the products-liability cases in which it has thus far been employed. See Reply at 3. While numerous courts in other states have confronted the question whether a contractor can sue a project architect when the contractor does not have an agreement with the architect, the New Mexico state courts have not addressed the issue yet.

No definite legal principle emerges from the various decisions in other states. There is a split in authority on this issue, with some states allowing suits against architects in situations such as the one before the Court, and others interposing the economic-loss rule as a barrier to litigation. Compare, e.g., Invo Florida, Inc. v. Somerset Venturer, Inc., 751 So.2d 1263, 1266 (Fla.Ct.App. 2000)(holding economic-loss rule inapplicable absent a contract between the parties), with BRW, Inc. v. Dufficy & Sons, Inc., 99 P.3d 66, 74-75 (Colo. 1990)(holding that economic-loss rule barred subcontractor's suit against architect despite lack of privity of contract). See 5 Bruner & O'Connor Construction Law § 17:90 (2008)(noting divide in applicability of economic-loss rule to construction services).

Although there is no clear majority rule, the Restatement (Second) of Torts has taken the position that a professional who negligently supplies "false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information." Id. § 552(1). At least one group of scholars has also recently stated that their research reveals that an architect's duty to a general contractor, independent of contract, is a generally recognized exception to the economic-loss rule. See Anthony Niblett, Richard Posner, & Andrei Shleifer, The Evolution of a Legal Rule at 13 (Third Draft, January 2008), available at http://www.economics.harvard.edu/faculty/shleifer/files/Niblett, Posner, Shleifer 3rd

draft.pdf.

While there are two distinct philosophies present in the cases from other states, the Court believes that the Supreme Court of New Mexico would follow the approach allowing for a claim of negligence against an architect. Although there are few New Mexico cases on the economic-loss rule, what decisions there are indicate that New Mexico law, particularly outside the products-liability realm, contemplates the existence of a contractual agreement between the parties. In Utah International, Inc. v. Caterpillar Tractor, Co., the New Mexico Court of Appeals stated that it adopted the economic-loss rule to "allow commercial parties to freely contract and allocate the risk of defective products as they wish." 108 N.M. at 542, 775 P.2d at 744. The Supreme Court of New Mexico held that the purpose of the rule is "to preserve the bedrock principle that contract damages be limited to those within the contemplation and control of the parties in framing their agreement." Shollenbarger, 119 N.M. at 550, 893 P.2d at 446 (internal quotation marks omitted). The Supreme Court of New Mexico continued: "As a matter of policy, the parties should not be allowed to use tort law to alter or avoid the bargain struck in the contract. The law of contract provides an adequate remedy." Id. There was a contract between the parties in Utah International, Inc. v. Caterpillar Tractor, Co.; in Shollenbarger, the Supreme Court did not have the issue before it and held that the economic-loss rule does not apply to claims for indemnity.

Moreover, the Supreme Court of New Mexico has held that, "[w]hen professional services arising from contract are substandard, a plaintiff may bring a cause of action for malpractice based on negligence or for breach of contract arising from the breach of the implied warranty to use reasonable skill." Adobe Masters, Inc. v. Downey, 118 N.M. 547, 548, 883 P.2d 133, 134 (1994). It would be a strange result, given that New Mexico's policy is "to preserve the line between contract law and tort law," Shollenbarger, 119 N.M. at 550, 893 P.2d at 446, to hold that the

economic-loss rule bars LCI2, a company not in a direct contractual relationship with de la Torre, from bringing a tort claim for a professional's negligence, when the rule would not apply to bar lawsuits by a party in a direct contractual relationship.

Finally, the general New Mexico policy is to have parties bear their proportionate share of the fault in a situation. See, e.g., Scott v. Rizzo, 96 N.M. 682, 689, 634 P.2d 1234, 1241 (1981) (adopting comparative negligence because it "reflects the more humane, the more fundamentally just system of apportioning liability in accordance with respective fault"). This approach to loss-sharing suggests that the principles of tort law should generally apply absent specific agreements between parties to define the scope of their duties to one another. If nothing else, this policy indicates that the Court should be cautious about extending the economic-loss rule to situations in which New Mexico state courts have not yet applied the rule.

Allowing contractor suits against architects has been characterized as "an efficient way of avoiding making architects contract separately with builders when both have already contracted with the owner." A. Niblett, R. Posner, & A. Shleifer, supra, at 13. Most large construction projects involve a network of bilateral contracts. Some courts have stated that, in "such a contract chain, the parties do have the opportunity to bargain and define their rights and remedies," and have justified their application of the economic-loss rule as preserving this freedom of contract. BRW, Inc. v. Dufficy & Sons, Inc., 99 P.3d at 72. It seems more likely, however, that a default rule, where the architect involved in the project owes those using its plans a basic duty of care, would be more efficient. Instead of contracting for such a duty, it places the burden on those parties that want to limit their liability to actively contract for such limitations.

This rule also does not expose architects to potentially unlimited liability. The general tort standards of reasonably foreseeable harm apply, confining the scope of potential actions. The

-13-

Court's holding also applies only to those directly involved in the construction project, and not to future potential occupants of the building. Here, LCI2 was contractually obligated to follow de la Torre's designs, and it was, or should have been, clear to de la Torre that LCI2 was going to rely on those plans in the course of its performance. Additionally, it seems more likely that architects are in a better situation to acquire professional insurance for their activities and adjust their rates accordingly, than general contractors are to insure themselves against the negligent losses of third parties – the architect will be in a position to directly provide information about himself or herself, but the contractor will be able to supply mostly speculation.

In sum, the Court concludes that the Supreme Court of New Mexico would hold that architects owe a duty to those, such as general contractors, who rely on an architect's services in the performance of their own tasks, despite not having a separate contract with the architect. The Court also concludes that the economic-loss rule would not be applied in New Mexico to the provision of architectural services outside of an actual contractual relationship. The result of these twin rules is that a builder may maintain a claim sounding in negligence against an architect for pecuniary losses that the builder suffered as the result of the architect's negligence, despite a lack of privity of contract.

## II.     THE COURT WILL ALLOW LCI2 TO AMEND ITS COMPLAINT TO RAISE A CLAIM FOR INDEMNIFICATION.

It is not immediately clear what LCI2 intends with the phrase "equitable indemnity" in Count Seven of its Proposed Amended Complaint. This ambiguity is not entirely LCI2's fault, however, as the case law is less than clear about the proper names for different indemnity doctrines under New Mexico law. The Court assumes that, by "equitable indemnity," LCI2 means "proportional indemnity," which is a doctrine the Supreme Court of New Mexico adopted in Shollenbarger.

Proportional indemnity is "a system of apportioning damages according to relative fault," id., 119 N.M. at 551, 893 P.2d at 447, which accords with LCI2 asserting that de la Torre must indemnify LCI2 "in direct proportion to the extent of" de la Torre's negligence, Proposed Amended Complaint ¶ 65, at 13. LCI2 also seems to have been referring to this concept at the hearing. See Tr. at 14:25-15:15 (Court, Boothby). Additionally, LCI2 may be seeking to assert a contractual-indemnification claim, based on its supplemental reply. See Supplemental Reply ¶ 4, at 2 (asserting that Architect's Agreement "supports LCI2's claim against de la Torre for indemnification").

Proportional indemnity is a doctrine of last resort, as LCI2 conceded at the hearing. See Tr. at 14:25-15:15 (Court, Boothby). It is used so that "a defendant who is otherwise denied apportionment of fault may seek partial recovery from another at fault." Shollenbarger, 119 N.M. at 552, 893 P.2d at 448. The doctrine is meant to vindicate the policy that, "in almost every instance, liability among concurrent tortfeasors will be apportioned according to fault, regardless of the plaintiff's choice of remedy." Id. at 553, 893 P.2d at 449. Here, Wheeler Peak is raising several claims. One of those claims is negligence. LCI2 can raise comparative negligence and will not be liable for more than its fair share of any fault on the negligence claim. Accordingly, proportional indemnity is not necessary to ensure that LCI2 bears only its proportional burden of liability on that claim and the Court will not allow LCI2 to amend its Third-Party Complaint to assert indemnification for any negligence for which it may be held liable to Wheeler Peak.

Wheeler Peak is also, however, bringing contract and warranty claims, and an unfair practices claim. It appears that LCI2 could potentially be held liable on those theories for de la Torre's negligence. A third-party's negligence would not necessarily be a complete defense against the breach of contract claim. The events that would excuse performance could be limited and whether the defense would be available might well be a fact-intensive issue. The cases that de la

Torre cites do not lead the Court to a different outcome. Those cases were personal-injury and wrongful-death cases involving contractors' duties, or lack thereof, to the public regarding dangerous conditions created by their work. See, e.g., Cumming v. Nielson's, Inc., 108 N.M. 198, 200, 769 P.2d 732, 734 (Ct.App. 1988)(holding that carefully following plans was exception to duty of care highway construction contractor owed to traveling public); Tipton v. Clower, 67 N.M. 388, 393-94, 356 P.2d 46, 49 (1960)(holding that following plans is exception to duty contractor owed to third parties for dangers to them). Wheeler Peak is not alleging personal-injury losses and is also in a contractual relationship with LCI2. The Court cannot at this stage rule out the possibility that LCI2 could be held liable, to some degree, for de la Torre's alleged negligence.

Because the comparative-negligence doctrine would not apply in the context of breach of contract, LCI2 will have to resort to other means, such as indemnification. LCI2 seems to at least have a plausible claim for indemnification. It does not appear that LCI2 could sue de la Torre for negligence unless LCI2 is found liable to Wheeler Peak, because there would be no damages. LCI2's negligence claims are therefore derivative of its liability, if any, to Wheeler Peak. The indemnification clause in the Architect's Agreement between de la Torre and Wheeler Peak, whose benefits arguably flow to LCI2 as a third-party beneficiary, as well as the requirement in the Contract that LCI2 follow de la Torre's design, both support the possibility of an existing legal relationship upon which indemnification might be founded. See Shollenbarger, 119 N.M. at 546, 893 P.2d at 441-42 (noting preexisting relationship generally required for indemnification). The Court does not need to determine that LCI2 is entitled to indemnification at this point – that is likely a matter for further factual development in the course of discovery. Additionally, equitable or proportional indemnity would be available only in the absence of other remedies. Currently, though, the Court needs only to determine whether LCI2 could plead a claim for indemnification under New

Mexico law. Based on what has been presented, the Court believes that it would not be futile to allow LCI2 to amend its Third-Party Complaint to state such a claim, and so the Court will allow it.

### III. THE COURT WILL NOT ALLOW LCI2 TO AMEND ITS COMPLAINT TO ASSERT CAUSES OF ACTION FOR BREACH OF WARRANTY, CONTRIBUTION, OR COMPARATIVE NEGLIGENCE.

LCI2 conceded at the hearing that Count Six of its Proposed Amended Complaint, for breach of implied warranties, is not viable because it depends upon there being a contractual relationship between LCI2 and de la Torre, and there is no contract between them. See Tr. at 14:7-12 (Court, Boothby). Accordingly, the Court will not allow LCI2 to amend its Third-Party Complaint to include such a cause of action. Additionally, LCI2 has conceded that contribution is not available in New Mexico in a case where the tort claims are premised on negligence. See id. at 14:16-22. Because of this concession, and because contribution lies only where there is joint-and-several liability, the Court will not permit LCI2 to amend its complaint to raised the claim of contribution it seeks in Count Eight of its Proposed Amended Complaint.

Count Five of the Proposed Amended Complaint, raising comparative fault or negligence, is also not a permissible amendment. Comparative negligence is apparently an affirmative defense, not an independent cause of action. See, e.g., Jaramillo v. Kellogg, 126 N.M. 84, 86-87 966 P.2d 792, 794-95 (1988)(noting use of comparative negligence as affirmative defense, including negligence of non-parties). But see Tipton v. Texaco, Inc., 103 N.M. 689, 692, 712 P.2d 1351, 1354 (1985)(noting that comparative negligence is not necessarily an affirmative defense that needed to be pled, but that it allows for impleader of third parties).[4] The Court is not forbidding LCI2 from

---

[4] The precise holding of Tipton v. Texaco, Inc. is somewhat unclear. It is possible that it allows for bringing in a third-party only in a situation that would have allowed for contribution

employing a comparative negligence defense – it is simply unnecessary and inappropriate to plead comparative negligence as a cause of action, particularly as the Court is allowing LCI2 to implead de la Torre on the grounds of negligence.

**IT IS ORDERED** that LCI2's Second Motion for Leave to Amend its Third-Party Complaint is granted in part and denied in part.  The Defendant and Third-Party Plaintiff L.C.I.2, Inc. will be permitted to amend its Third-Party Complaint to plead causes of action against Third-Party Defendant de la Torre Architects, P.A., A.I.A., for professional negligence, negligent misrepresentation, and indemnification.  The Court will not permit amendment to plead causes of action for contribution, breach of warranty, or comparative negligence.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Charles V. Henry, IV
Holly Hart
Kris Knutson
Scheuer, Yost & Patterson
Santa Fe, New Mexico

>    *Attorneys for Plaintiff and Counter-Defendant*
>     *Wheeler Peak, LLC*

---

before New Mexico's abolition of joint-and-several liability in most cases of negligence.  See103 N.M. at 693, 712 P.2d at 1355  ("The abolition of contribution and contributory negligence as a complete defense should not also abolish impleader practice. Accordingly, the rules must be adjusted . . . and a third-party complaint that previously would have been allowed under joint tortfeasor contribution theories must now be allowed, under liberal construction of the rules of procedure, to assert a comparative negligence theory or a breach of contract indemnity claim."). Given that the Court is allowing LCI2 to bring de la Torre into the suit on negligence theories, and is also allowing LCI2 to argue comparative negligence as a defense, it is not necessary to address the particularities of the comparative negligence doctrine at this stage in the litigation.

Alan Maestas
Lee Boothby
Maestas Baker Boothby & Warren, P.C.
Taos, New Mexico

– and –

Tim L. Fields
Samuel L. Winder
Modrall Sperling Law Firm
Albuquerque, New Mexico

>	*Attorneys for Defendant, Counterclaimaint, and Third-Party Plaintiff
>	 L.C.I.2, Inc.*

Todd Schwarz
H. Brook Laskey
Bryan Hatherly
Miller Stratvert, P.A.
Albuquerque, New Mexico

>	*Attorneys for Third-Party Defendant Donner Plumbing and Heating Inc.*

Robert J. Perovich
Keleher & McLeod
Albuquerque, New Mexico

>	*Attorneys for Third-Party Defendant De La Torre Architects, P.A., A.I.A.*

Steven L. Gonzales
Silva & Saucedo, P.C.
Albuquerque, New Mexico

>	*Attorney for Third-Party Defendant Parker Excavating, Inc.*

Robert Bruce Collins
Holly R. Harvey
Law Office of Robert Bruce Collins
Albuquerque, New Mexico

>	*Attorneys for Third-Party Defendant JC Constructors, Inc.*