**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

WHEELER PEAK, LLC
an Illinois limited liability company,

        Plaintiff,

vs.                                                                                          No. CIV 07-1117 JB/WDS

L.C.I.2, INC., a New Mexico Corporation,

        Defendant.

L.C.I.2, INC., a New Mexico Corporation,

        Counterclaimant,

vs.

WHEELER PEAK, LLC, an Illinois
limited liability company, KMG, INC.
an Illinois Corporation, and KEITH GILES, an individual,

        Counter-Defendants.

L.C.I.2, INC., a New Mexico Corporation,

        Third-Party Plaintiff,

vs.

DONNER PLUMBING AND HEATING, INC.;
JC CONSTRUCTORS, INC., and DE LA
TORRE ARCHITECTS, P.A., A.I.A.,
Simplex Grinnell, LP, Melissa Deaver-Rivera,
Carl Davis and Lisa Davis, husband and wife,
David Borns, Roy Diklich and Kathy Diklich,
husband and wife, Kent Nix and Angela Nix,
husband and wife, Joseph Forbess and Lisa Forbess,
husband and wife, and Ted Galanthay and Phyllis Galanthay,
husband and wife,

        Third-Party Defendants.

DONNER PLUMBING AND HEATING, INC.

  Third-Party Plaintiff,

vs.

PARKER EXCAVATING, INC.

  Third-Party Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant LCI2's Motion for Partial Summary Judgment and Memorandum Brief in Support on the Issue of Consequential Damages, filed November 26, 2008 (Doc. 120)("Motion"). The Court held a hearing on February 10, 2009. The primary issue is whether Defendant, Counterclaimaint and Third-Party Plaintiff L.C.I.2, Inc. may be liable to Plaintiff and Counter-Defendant Wheeler Peak, LLC for consequential damages. Because there are genuine disputes of material fact whether the parties intended to incorporate the form document which contains a waiver of consequential damages into their agreement, the Court will deny the motion.

## FACTUAL BACKGROUND

Wheeler Peak engaged LCI2, a general contractor, to construct three condominium buildings in the Kachina Village Subdivision in Taos Ski Valley, New Mexico. This litigation arises out of that project going sour. Wheeler Peak alleges that LCI2 failed to substantially complete the three buildings on time, and that construction flaws resulted in significant water and fire damage to the buildings, and other damages to Wheeler Peak. See Complaint for Breach of Contract, Breach of Warranty, Negligence and Unfair Practices ¶¶ 6-24, at 2-5, filed November 6, 2007 (Doc. 1)("Complaint"); Exhibit A to Motion, Wheeler Peak Damages Summary at 1-5, filed November 26, 2008 (Doc. 120-2).

From LCI2's perspective, the relevant facts for this motion are few. According to LCI2, its Contract with Wheeler Peak incorporated the A201-1997 General Conditions of the Contract for Construction ("General Conditions"), which is a standard contract that the American Institute of Architects produces. See Exhibit C to Motion, Standard Form of Agreement between Owner and Contractor art. 1, at 1, dated November 29, 2004 (Doc. 120-4)("Contract")(stating that "Contract Documents" include "AIA Documents A201-1997"). One provision of the General Conditions is a waiver of consequential damages, in which the "Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract." Exhibit B to Motion, AIA Document A201-1997: General Conditions of the Contract for Construction § 4.3.10, at 21 (Doc. 120-3)("General Conditions").

In Wheeler Peak's view, the issue is not so simple. Counter-Defendant Keith Giles, who is a principal in Counter-Defendant KMG, Inc., the managing member of Wheeler Peak, negotiated the Contract for Wheeler Peak. According to Giles, neither party to the Contract considered or reviewed the General Conditions and that document was not intended to be part of the Contract. See Exhibit C to Response, Affidavit of Keith M. Giles ¶¶ 8, 11, at 2 (Doc. 127-2)("Giles Aff."). Giles also states that there were many disputes over the course of the project, but no one raised the General Conditions when discussing contractual rights or responsibilities. See Giles Aff. ¶ 9, at 2. Wheeler Peak also points out that Chuck Landgraf, LCI2's owner, testified at his deposition that the General Conditions are not part of the Contract. See Exhibit A to Response, Deposition of Charles Michael Landgraf at 148:14-149:3 (taken July 17, 2008)(Doc. 172-2)("Landgraf Depo.").

**PROCEDURAL BACKGROUND**

LCI2 moves for summary judgment on its potential liability to Wheeler Peak for consequential damages. LCI2 argues that the waiver in the General Conditions is enforceable and

should bar all of Wheeler Peak's consequential damages claims against it.  Although stating that "there is no clear answer as to whether or not the Contract is governed by the U.C.C.," LCI2 maintains that summary judgment is appropriate under either the Uniform Commercial Code ("UCC") or New Mexico common law.  Motion at 8.

As to the UCC, LCI2 argues that the waiver is enforceable unless it is unconscionable.  See Motion at 8-9 (citing NMSA 1978 § 55-2-719(3)).  LCI2 contends that neither party drafted the General Conditions, that the waiver is conspicuous and mutual, and that two sophisticated commercial parties bargained for the contract terms.  See Motion at 9-13.  Based on these features, LCI2 urges the Court to find the waiver provision valid under the UCC.

As to New Mexico common law, LCI2 argues that the waiver is enforceable because it is a clear expression of the parties' mutual assent.  LCI2 points out several features that it contends demonstrate this clear intent in the Contract: (i) striking certain clauses before signing; (ii) the General Conditions document being widely used in construction contracts; and (iii) Wheeler Peak asserting a breach-of-warranty claim under a different provision in the General Conditions.  See Motion at 14-15.  LCI2 maintains that, because of these features and because New Mexico favors freedom of contract, the Court should find the damages waiver valid under New Mexico common law as well.

Wheeler Peak argues that the General Conditions are not part of the Contract at all.  See Wheeler Peak, LLC's Memorandum in Opposition to LCI2's Motion for Partial Summary Judgment on the Issue of Consequential Damages at 2-6, filed December 8, 2008 (Doc. 127)("Response").  Wheeler Peak also contends that the UCC does not govern construction contracts.  See Response at 6-8.  Under New Mexico common law, Wheeler Peak asserts, LCI2 must show a knowing and intentional waiver, which Wheeler Peak maintains LCI2 has not shown.  See

id. at 8-10. Wheeler Peak further contends that the waiver is vague, inequitable, and asymmetrical because an owner's potential consequential damages generally far exceed a contractor's potential damages. See id. at 10-12. Finally, Wheeler Peak argues that the classification of various damages as consequential or direct is a factual question inappropriate for summary judgment. See id. at 12-13.

In reply, LCI2 first argues that the factual issues Wheeler Peak raises are either sham issues or immaterial. See Defendant LCI2's Reply in Support of its Motion for Partial Summary Judgment on the Issue of Consequential Damages at 3-6, filed January 5, 2009 (Doc. 153)("Reply"). LCI2 contends that Wheeler Peak's reliance on the General Conditions for one of their causes of action precludes its current stance against incorporation. See Reply at 8. LCI2 further contends that Wheeler Peak has not demonstrated that the waiver is unclear or inequitable, and that summary judgment is proper here. See id. at 9-11.

At the hearing, Tim Fields, LCI2's counsel, emphasized that Richard Clifton, LCI2's Vice President at the time, not Landgraf, signed the Contract for LCI2. See Transcript of Hearing at 10:20-25 (Fields)(taken February 10, 2009, filed March 18, 2009)(Doc. 192)("Tr."). Mr. Fields stated that Landgraf acquired his familiarity with the Contract after the Contract was signed, when he became more involved in the project after his father's death. See Tr. at 11:14-12:7 (Fields). Donald A. Walcott, Wheeler Peak's attorney, argued that Wheeler Peak was allowed to plead a claim for breach of warranty in the alternative and that, although the Complaint was initially drafted as apparently accepting that the General Conditions are part of the Contract, in his view the facts revealed as the case progressed showed the opposite. See Tr. at 17:1-18:16 (Walcott & Court).

## RELEVANT NEW MEXICO CONTRACT LAW

The first issue that the Court must decide is whether the UCC applies to the Contract. A

hidden, unbriefed issue is whether the parties had a meeting of the minds regarding the Contract's mutual terms. Finally, the Court must determine whether the General Conditions are unconscionable.

### 1. Applicability of the UCC.

Article 2 of the UCC covers contracts "relating to the present or future sale of goods," NMSA 1978 § 55-2-106(1), but not other contracts, see id. § 55-2-102. "Sale" is defined as "passing of title from the seller to the buyer for a price," id. § 55-2-106(1), while "goods" are defined, with some exceptions, as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale," id. § 55-2-105(1). While "[a] minority of jurisdictions divide a mixed contract for goods and services into its component parts and apply Article 2 solely to the transaction for the sale of goods," in New Mexico such mixed contracts are governed by one body of law determined according to the primary purpose test. Kirkpatrick v. Introspect Healthcare Corp., 114 N.M. 706, 709, 845 P.2d 800, 803 (1992). Under this test, "Article 2 applies to mixed contracts only if the primary purpose of the contract is to sell goods rather than to provide services." Kirkpatrick v. Introspect Healthcare Corp., 114 N.M. at 709, 845 P.2d at 803.

### 2. Contract Formation.

A contract requires a meeting of the minds regarding the material terms of the contract. See Johnson v. Nickels, 66 N.M. 181, 184, 344 P.2d 697, 699 (1959); Balboa Const. Co., Inc. v. Golden, 97 N.M. 299, 302, 639 P.2d 586, 589 (Ct. App. 1981). "When the minds of the parties have not met on any part or provision of a proposed contract, all of its portions are a nullity." Trujillo v. Glen Falls Ins. Co., 88 N.M. 279, 281, 540 P.2d 209, 211 (1975)(internal quotation marks omitted). In Grubb v. Kempthorne, No. Civ. 06-1260 JB/DJS, Memorandum Opinion and Order, entered August 25, 2008 (Doc. 46)(D.N.M.)(Browning, J.), the Court addressed a situation similar to the one here.

One party to a settlement agreement, the plaintiff, believed that the agreement's clause discharging certain claims encompassed a claim the defendant had against the plaintiff. The Court noted that the dispute over this clause might create an issue whether the parties had the meeting of the minds necessary for an enforceable contract. See id. at 36. The Court further stated that whether the parties had a meeting of the minds and whether the disputed provision was a material term were questions of fact to be resolved at trial. See id. at 37 & n.2 (citing Stites v. Yelverton, 60 N.M. 190, 193, 289 P.2d 628, 630 (1955)).

### 3. Unconscionable Contracts.

Certain contracts or provisions in contracts may be unenforceable under New Mexico law because they are unconscionable.

> The classic articulation of unconscionability is comprised of two prongs: substantive unconscionability and procedural unconscionability. Substantive unconscionability relates to the content of the contract terms and whether they are illegal, contrary to public policy, or grossly unfair. Procedural unconscionability is determined by analyzing the circumstances surrounding the contract's formation, such as whether it was an adhesive contract and the relative bargaining power of the parties.

Fiser v. Dell Computer Corporation ¶ 20, 144 N.M. 464, 470, 188 P.3d 1215, 1221 (2008)(citations omitted).

> When its terms are unreasonably favorable to one party, a contract may be held to be substantively unconscionable. However, the threshold for such a holding is very high, as the terms must be such as, no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other.

Monette v. Tinsley ¶ 19, 126 N.M. 748, 975 P.2d 361, 365 (Ct. App. 1999)(internal quotation marks, ellipsis and citations omitted). "[T]he fact that some of the terms of the agreement resulted in a hard bargain or subjected a party to exposure of substantial risk, does not render a contract unconscionable where it was negotiated at arm's length, and absent an affirmative showing of mistake, fraud or illegality." Smith v. Price's Creameries, Div. of Creamland Dairies, Inc., 98 N.M.

at 545, 650 P.2d at 829.

## ANALYSIS

As the parties have presented the issue, the primary question is whether there is a material dispute of fact whether the General Conditions were intended to be part of the Contract. On this question, there are disputed facts that preclude summary judgment. Wheeler Peak's contention that the parties did not agree to incorporate the General Conditions, however, raises the question whether there was a meeting of the minds on the Contract. The parties have not briefed this issue, however, so the Court will highlight the issue, but not decide it. Nevertheless, it is likely that disputed facts would be preclude summary judgment on that issue.

### I.      NEW MEXICO COMMON LAW GOVERNS THE CONTRACT.

Although LCI2 maintains that whether the UCC or the common law governs the Contract is ultimately immaterial, Wheeler Peak advocates for the UCC being inapplicable. Contracts "relating to the present or future sale of goods" fall under Article 2 of the UCC, NMSA 1978 § 55-2-106(1), but other contracts are outside Article 2's ambit, see id. § 55-2-102. "Sale" is defined as "passing of title from the seller to the buyer for a price," id. § 55-2-106(1), while "goods" are defined, with some exceptions not relevant here, as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale," id. § 55-2-105(1). If the contract is a mixed contract, involving the sale of both goods and services, then New Mexico courts employ the primary-purpose test, under which "Article 2 applies to mixed contracts only if the primary purpose of the contract is to sell goods rather than to provide services." Kirkpatrick v. Introspect Healthcare Corp., 114 N.M. at 709, 845 P.2d at 803.

None of the parties seem to have filed the full set of contract documents, but from what the Court can glean from the Contract, the provision of services rather than goods seems to be the

Contract's dominant purpose. "The Work" is the heart of the Contract, but the Contract does not fully define "the Work," except through reference to documents not before the Court. Contract art. 2, at 2. Despite the incomplete record, the Contract seems to envision the provision of construction services rather than the provision of goods as being LCI2's major role. LCI2 was to perform "engineering analyses," id., ensure an "adequate supply of workers," id. art. 3, at 2, and obtain certificates of occupancy, see id. art. 4.2, at 2. LCI2 was to be paid a six-percent fee, based on the cost of the project, id. art. 5.1.2, at 3, and to be reimbursed for a variety of costs associated with the project, such as labor costs, see id. art. 7.2, at 4, and subcontractor costs, see id. art. 7.3, at 5. Notably, costs for materials were treated as reimbursable expenses. See id. arts. 7.4, 7.5, at 5. If LCI2 had done nothing more than drop off stacks of lumber, plastic pipe, and rolls of copper wiring at the building site, it is doubtful that Wheeler Peak would consider LCI2 to have fulfilled the "primary purpose of the contract." Kirkpatrick v. Introspect Healthcare Corp., 114 N.M. at 709, 845 P.2d at 803.

LCI2's role under the Contract was similar to the interior designer's role in Kirkpatrick v. Introspect Healthcare Corp. In that case, the Supreme Court of New Mexico found that an interior designer's contract with an owner was primarily a contract for services, despite the contract's expressly providing for the sale of furnishings as part of the performance. Selling the furniture was only an ancillary goal of the contract, while the primary point of the contract was securing the designer's "experience and expertise." Id. at 710, 845 P.2d at 804. Similarly, the main thrust of the Contract is obtaining LCI2 as a general contractor to orchestrate the building of condominiums, with LCI2 buying and using goods as an incidental part of its task. In support of the UCC applying, Wheeler Peak primarily cites what it admits is dicta from Morningstar Water Users Ass'n, Inc. v. Farmington Mun. School Dist. No. 5, 120 N.M. 307, 901 P.2d 725 (1995). The Supreme Court of

New Mexico had noted: "In a traditional construction scenario, title to a finished construction project goes to the purchaser of the project." Id. at 318, 901 P.2d at 736. Even assuming that this sentence was a holding, it would not apply here. LCI2 did not sell condominiums to Wheeler Peak; it organized construction on what was already Wheeler Peak property.

While some construction contracts might well be primarily contracts for the sale of goods -- such as relatively straightforward construction contracts perhaps -- the Court cannot characterize the complex endeavor that LCI2 was contracted to oversee as being primarily about furnishing goods. The Contract at issue was primarily one for services, not goods. Article 2 of the UCC is inapplicable.

## II.     THERE ARE GENUINE DISPUTES OF MATERIAL FACT WHETHER THE PARTIES INTENDED TO INCORPORATE THE GENERAL CONDITIONS INTO THE CONTRACT.

Wheeler Peak contends that the parties to the Contract did not intend the General Conditions to be part of the Contract. By contrast, LCI2 argues that Wheeler Peak has not shown any material fact about the General Conditions being incorporated into the Contract. LCI2 has not, however, challenged whether the parties had a binding agreement or whether Wheeler Peak's argument that a particular term in a written contract can be ignored because neither party considered the term is legally sound. Considering the issue as the parties have framed it -- i.e., whether the parties intended the General Conditions to be part of the Contract -- there is a genuine dispute of material fact that precludes summary judgment. Wheeler Peak's approach, however, raises questions about the materiality of the term incorporating the General Conditions and about whether there was a meeting of the minds sufficient to produce a contract in the first place.

Whether parties have assented to the terms of a contract is a question of fact. See City of Sunland Park v. Harris News, Inc. ¶ 20, 138 N.M. 588, 595, 124 P.3d 566, 573 (Ct. App. 2005).

Giles, who negotiated the Contract on Wheeler Peak's behalf, asserts in his affidavit that neither side to the Contract had reviewed or considered the General Conditions or had a copy of that document when signing the Contract. See Giles Aff. ¶ 8, at 2. This statement creates support for Wheeler Peak not intending the General Conditions to be part of the Contract. Trying to counter the force of the affidavit, LCI2 argues that the Court should disregard Giles' affidavit because it contradicts his deposition, the Damages Summary, and the Complaint. LCI2 does not identify which sections of these documents the affidavit contradicts. From LCI2's arguments in the Motion, the main contradiction alleged seems to be Wheeler Peak's breach-of-warranty claim, which rests on the General Conditions. To the extent that there is some other contradiction, LCI2 has failed to articulate it or point out the support for the contradiction. Wheeler Peak is asserting a claim premised on the existence of the General Conditions as part of the Contract and asserts in its Complaint that "the Contract incorporated the . . . General Conditions." Complaint ¶ 9, at 2. Mr. Walcott stated that he viewed the breach-of-warranty claim as a claim in the alternative, that he did not draft the Complaint, and that he believed the facts now showed that the General Conditions were not incorporated and that he would not have made the allegation if the Complaint had been drafted at a later time. See Tr. at 17:1-18:16 (Walcott & Court). Based upon these representations, the Court will accept that Wheeler Peak no longer asserts a breach-of-warranty claim as a primary claim, but only as an alternative claim. This new position appears to the Court to be a good-faith change brought about by discovery and the natural progress of the case. Accordingly, the Court will consider Giles' affidavit.

In addition to Giles' affidavit, Wheeler Peak draws on Landgraf's deposition testimony that the General Conditions were not part of the Contract. See Landgraf Depo. at 148:14-149:3. LCI2 argues that this testimony is irrelevant, because Landgraf did not negotiate the Contract for LCI2.

Mr. Fields also explained that Landgraf's familiarity with the Contract arose after the Contract was signed, when his father died and Landgraf became more involved in the project. See Tr. at 11:14-12:7 (Fields). Even though Landgraf did not negotiate the Contract, he became familiar with the Contract from LCI2's perspective. His knowledge of the Contract thus reflects, to some degree, LCI2's understanding of the Contract when the Contract was negotiated and signed. This link is somewhat tenuous, but Wheeler Peak also presents other evidence about what LCI2 intended to be in the Contract.

First, Giles' affidavit states that Clifton, who negotiated the Contract for LCI2, never made any mention of the General Conditions. See Giles Aff. ¶ 8, at 2. Assent to the terms of a contract is viewed objectively, see Beggs v. City of Portales ¶ 40, 142 N.M. 505, 515, 167 P.3d 953, 963 (Ct. App. 2007), so this observation is relevant and provides evidence that LCI2 was also not considering the term incorporating the General Conditions. Second, Giles states that, despite many problems during construction, neither Wheeler Peak nor LCI2 ever referenced the General Conditions. See Giles Aff. ¶ 9, at 2. Course of performance is an appropriate consideration when determining whether a contract is ambiguous. See McNeill v. Rice Engineering and Operating, Inc. ¶ 14, 133 N.M. 804, 808-09, 70 P.3d 794, 798-99 (Ct. App. 2003). While the question here is not one of ambiguity per se, the rationale is similar. What parties do in performing a contract tends to mirror what they were thinking when entering into the contract. The General Conditions not being a topic of discussion when disputes flared up during construction provides evidence that neither party understood that document as being part of their Contract.

One other issue bears mentioning, because it arguably could change the test to be applied in evaluating whether the damages waiver in the General Conditions binds Wheeler Peak. Wheeler Peak contends that a damages waiver requires a knowing and intentional relinquishment. Wheeler

Peak cites J.R. Hale Contracting Co. v. United New Mexico Bank, 110 N.M. 712, 799 P.2d 581 (1990), but that case dealt with the doctrine of waiver, which is a different issue than contractual provisions limiting damages or liability, such as the provision in question here. Waiver, in the sense that J.R. Hale Contracting Co. v. United New Mexico Bank uses the term, is a concept related to estoppel. See id. at 716, 799 P.2d at 585 (comparing waiver and estoppel). A party to a contract may voluntary waive its contractual rights through its conduct or statements. Unlike in estoppel, however, no reliance is necessary. See id. Such a waiver of rights after the contract is in effect is different than the contracting for a damages limitations that is at issue here. The Court is not aware of any New Mexico cases holding that a contractual provision limiting damages requires some heightened or different proof than any other contractual provision.

Taking all the evidence together, Wheeler Peak has raised a factual issue that cannot be resolved on summary judgment about whether it or LCI2 intended the General Conditions to be incorporated into the Contract. As the parties have presented the issue, the Court thus cannot properly grant summary judgment. Wheeler Peak's denying that the General Conditions are part of the Contract, however, raises fundamental issues that have not been briefed, namely, whether there was a meeting of the minds at all regarding the Contract and whether a party can argue that there was mutual assent regarding most of an agreement, but not certain terms. Even if raised, these issues would likely be fraught with factual disputes and thus not a proper basis for summary judgment, but the Court will sketch out the problem.

A contract requires a meeting of the minds regarding the material terms of the contract. See Johnson v. Nickels, 66 N.M. at 184, 344 P.2d at 699; Balboa Const. Co., Inc. v. Golden, 97 N.M. at 302, 639 P.2d at 589. "When the minds of the parties have not met on any part or provision of a proposed contract, all of its portions are a nullity." Trujillo v. Glen Falls Ins. Co., 88 N.M. at 281,

540 P.2d at 211 (internal quotation marks omitted).  Furthermore, "a party who executes and enters into a written contract with another is presumed to know the terms of the agreement, and to have agreed to each of its provisions in the absence of fraud, misrepresentation or other wrongful act of the contracting party."  Smith v. Price's Creameries, Div. of Creamland Dairies, Inc., 98 N.M. at 545, 650 P.2d at 829.  This case law, which tracks the general principles of contract law, implies that a party cannot argue that there was no mutual assent to particular terms of a contract without undermining the contract as a whole.  Materiality of contract terms and the determination of whether a contract existed, however, are questions of fact.  See Grubb v. Kempthorne, No. Civ. 06-1260 JB/DJS, Memorandum Opinion and Order at 37 n.2 (citing Stites v. Yelverton, 60 N.M. 190, 193, 289 P.2d 628, 630 (1955)); City of Sunland Park v. Harris News, Inc. ¶ 20, 138 N.M. at 595, 124 P.3d at 573 (noting that assent to terms of a contract is a factual issue).  If the incorporation of the General Conditions is a material term, it may be that there was no meeting of the minds on the Contract as a whole.[1]  There would thus be no incorporation, but also no Contract.[2]  If the term is not material, though, the Contract would remain enforceable.[3]

The parties have not addressed these issues, so the Court will not rule on them at this time.  Moreover, from what the Court knows of the facts of this case, such issues seem ill-suited for

---

[1] Whether the General Conditions are part of the Contract is a major issue.  Whether the incorporation is a material term, though, depends upon what the parties thought in contracting, and not what has happened since the parties entered into the Contract.

[2] Given the parties' conduct, however, it might well be that, even if there was no meeting of the minds, promissory estoppel or similar doctrines might apply.

[3] New Mexico courts have not addressed what happens to non-material terms in such a situation.  In other words, if the incorporation of the General Conditions is not a material term, the question would become whether the incorporation drops out of the Contract or remains in and is binding on both parties.  This question, however, is not clearly answered in New Mexico law.

summary judgment and so the ultimate result -- denial of summary judgment -- would likely remain the same even if the issues were raised. The Court lays out some of the basic framework, however, to help the parties with some of the potential issues that may arise as the case moves towards trial.

### III.    IF THERE IS A CONTRACT AND THE GENERAL CONDITIONS ARE PART OF THE CONTRACT, THE LIMITATION ON DAMAGES IS ENFORCEABLE.

Although the Court denies summary judgment because there are disputed facts surrounding the issues the parties have raised, the Court will also address whether the damages waiver is enforceable. Denial of summary judgment does not equal a finding in Wheeler Peak's favor. The damages limitation may ultimately be found to be binding on Wheeler Peak at a later date, making its other arguments against enforceability still relevant. Assuming that there is a contract and that the General Conditions are incorporated into it, the waiver of consequential damages would be enforceable. Wheeler Peak advances two arguments why the Court should not enforce the waiver even if it is part of the Contract: (i) because the provision is vague; and (ii) because the provision is inequitable. Neither argument is availing.

First, the provision is not vague. Wheeler Peak contends that the term consequential damages has no fixed meaning and that the provision conflicts with other provisions. In the abstract, consequential damages may have no fixed meaning, but in the context of a particular contract under a particular state's law, consequential damages will have a meaning. Wheeler Peak argues that some of the non-exclusive items listed in the provision are not genuinely consequential damages, but the Court does not see how that makes the provision ambiguous. Nor does tension or possible conflict with other provisions in the General Conditions generate ambiguity. Such problems might make interpreting the scope of the provision difficult in some situations, but difficulty is different than vagueness and the Court does not see the clause as being so vague that it cannot be enforced.

Second, the provision is not inequitable simply because it is arguably lopsided. Wheeler Peak cites scholarly criticism of the General Conditions, but no New Mexico law for its contention that the waiver is inequitable or unconscionable.

> The classic articulation of unconscionability is comprised of two prongs: substantive unconscionability and procedural unconscionability. Substantive unconscionability relates to the content of the contract terms and whether they are illegal, contrary to public policy, or grossly unfair. Procedural unconscionability is determined by analyzing the circumstances surrounding the contract's formation, such as whether it was an adhesive contract and the relative bargaining power of the parties.

Fiser v. Dell Computer Corporation ¶ 20, 144 N.M. at 470, 188 P.3d at 1221 (citations omitted). The Court does not see any indications of procedural unconscionability here. Nor has Wheeler Peak identified any law or public policy that such a clause might violate. Wheeler Peak thus seems to rest solely on the provision being grossly unfair. Even if it is true that, as Wheeler Peak argues, owners are generally subject to greater potential consequential damages than contractors are, that asymmetry does not render the waiver grossly unfair. This argument fails to account for the provision being but one provision among many. No principle of contract law dictates that every term in a contract be calibrated to equally balance the equities between the contracting parties.

> When its terms are unreasonably favorable to one party, a contract may be held to be substantively unconscionable. However, the threshold for such a holding is very high, as the terms must be such as, no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other.

Monette v. Tinsley ¶ 19, 126 N.M. 748, 975 P.2d at 365 (internal quotation marks, ellipsis and citations omitted). The Court does not believe that the potential imbalance Wheeler Peak identifies meets this high threshold. The potentially unequal effect of the provision is not grossly unfair. Generally, "the fact that some of the terms of the agreement resulted in a hard bargain or subjected a party to exposure of substantial risk, does not render a contract unconscionable where it was negotiated at arm's length, and absent an affirmative showing of mistake, fraud or illegality." Smith

v. Price's Creameries, Div. of Creamland Dairies, Inc., 98 N.M. at 545, 650 P.2d at 829. Accordingly, the Court does not see any sound basis for finding a contractual limitation on consequential damages between two sophisticated parties to be unconscionable.[4]

**IT IS ORDERED** that Defendant LCI2's Motion for Partial Summary Judgment and Memorandum Brief in Support on the Issue of Consequential Damages is denied.

                _____
                UNITED STATES DISTRICT JUDGE

*Parties and Counsel*:

Donald A. Walcott
Charles V. Henry, IV
Holly Hart
Kris Knutson
Scheuer, Yost & Patterson
Santa Fe, New Mexico

    *Attorneys for Plaintiff and Counter-Defendant Wheeler Peak, LLC*

Alan Maestas
Lee Boothby
Maestas Baker Boothby & Warren, P.C.
Taos, New Mexico

-- and --

---

[4] Wheeler Peak also argues that summary judgment is inappropriate because identifying which damages are consequential damages involves factual issues. Because the Court is denying summary judgment, the Court need not address that question. Unlike the other issues raised, which may become important to determining the legal effect to be given to the damages waiver during or after trial, this issue is relevant only if the Court were to grant summary judgment.

Tim L. Fields
Samuel L. Winder
Modrall Sperling Law Firm
Albuquerque, New Mexico

>   *Attorneys for Defendant, Counterclaimaint, and Third-Party Plaintiff*
>     *L.C.I.2, Inc.*

Todd Schwarz
H. Brook Laskey
Bryan Hatherly
Miller Stratvert, P.A.
Albuquerque, New Mexico

>   *Attorneys for Third-Party Defendant Donner Plumbing and Heating Inc.*

Robert J. Perovich
Keleher & McLeod
Albuquerque, New Mexico

>   *Attorneys for Third-Party Defendant De La Torre Architects, P.A., A.I.A.*

Steven L. Gonzales
Silva & Saucedo, P.C.
Albuquerque, New Mexico

>   *Attorney for Third-Party Defendant Parker Excavating, Inc.*

Robert Bruce Collins
Holly R. Harvey
Law Office of Robert Bruce Collins
Albuquerque, New Mexico

>   *Attorneys for Third-Party Defendant JC Constructors, Inc.*

Michael S. Jahner
Yenson, Lynn, Allen & Wosick, P.C.
Albuquerque, New Mexico

-- and --

J. Michael Roberts
Jason R. Scott
Shook Hardy & Bacon LLP
Kansas City, Kansas

  *Attorneys for Third-Party Defendant Simplex Grinnell, LP*

Melissa Deaver-Rivera
Address Unknown

  *Defendant and Third-Party Defendant pro se*

David Born
Carl Davis
Lisa Davis
Kathy Diklich
Roy Diklich
Joseph Forbess
Lisa Forbess
Phyllis Galanthay
Ted Galanthay
Angela Nix
Kent Nix
Addresses Unknown

  *Third-Party Defendants pro se*