# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

WHEELER PEAK, LLC
an Illinois limited liability company,

       Plaintiff,

vs.                                                                                              No. CIV 07-1117 JB/WDS

L.C.I.2, INC., a New Mexico Corporation,

       Defendant,

L.C.I.2, INC., a New Mexico Corporation,

       Counterclaimant,

vs.

WHEELER PEAK, LLC,
an Illinois limited liability company,
KMG, INC., an Illinois Corporation, and
KEITH GILES, an individual,

       Counter-Defendants.

L.C.I.2, INC., a New Mexico Corporation,

       Third-Party Plaintiff,

vs.

DONNER PLUMBING AND HEATING, INC.;
JC CONSTRUCTORS, INC., and DE LA
TORRE ARCHITECTS, P.A., A.I.A.,
Simplex Grinnell, LP, Melissa Deaver-Rivera,
Carl Davis and Lisa Davis, husband and wife,
David Borns, Roy Diklich and Kathy Diklich,
husband and wife, Kent Nix and Angela Nix,
husband and wife, Joseph Forbess and Lisa Forbess,
husband and wife, and Ted Galanthay and Phyllis Galanthay,
husband and wife,

       Third-Party Defendants.

DONNER PLUMBING AND HEATING, INC.

       Third-Party Plaintiff,

vs.

PARKER EXCAVATING, INC.

       Third-Party Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Third Party Defendant de la Torre Architects, P.A., A.I.A.'s Motion for Summary Judgment on LCI2's Third Amended Third Party Complaint, filed January 30, 2009 (Doc. 170). The Court held a hearing on April 30, 2009. The primary issues are: (i) whether the Court should grant summary judgment on Defendant, Counterclaimant, and Third-Party Plaintiff L.C.I.2, Inc.'s indemnification claim against Third-Party Defendant de la Torre Architects, P.A., A.I.A.; and (ii) whether the Court should grant summary judgment on LCI2's direct claims -- for professional negligence and negligent misrepresentation -- against de la Torre. Because the Court concludes that de la Torre's arguments in favor of summary judgment on LCI2's indemnification claim are either legally flawed, involve disputed facts, or involve issues on which de la Torre has not met its initial burden for summary judgment, the Court will deny the motion with respect to the indemnification. Because LCI2 has not introduced any evidence supporting it having any direct claims against de la Torre or otherwise articulated a basis for such claims, and because the Court does not believe that LCI2 has shown that the motion should be deferred, the Court will grant summary judgment on LCI2's professional negligence and negligent misrepresentation claims.

## FACTUAL BACKGROUND

Plaintiff and Counter-Defendant Wheeler Peak, LLC engaged LCI2, a general contractor,

to construct three condominium buildings in the Kachina Village Subdivision in Taos Ski Valley, New Mexico.  This litigation arises out of that project going sour.  Wheeler Peak alleges that LCI2 failed to substantially complete the three buildings on time, and that construction flaws resulted in significant water and fire damage to the buildings, and in other damages to Wheeler Peak.  See Complaint for Breach of Contract, Breach of Warranty, Negligence and Unfair Practices ¶¶ 6-24, at 2-5, filed November 6, 2007 (Doc. 1).  In turn, LCI2 has impleaded a number of other parties, including de la Torre.

Although brought as a motion for summary judgment, and despite de la Torre asserting that there are several relevant undisputed facts, this motion turns almost entirely on legal questions. Only one factual issue is relevant here: whether LCI2 requested extensions of time from Wheeler Peak when the project faced delays, either because de la Torre caused those delays or otherwise. De la Torre contends that it is undisputed that LCI2 never any made any such requests.  See Exhibit 2 to Motion, Deposition of Charles Michael Landgraf at 116:16-25, 124;17-19, 138:25-139:2 (taken July 17, 2008)(Doc. 170-3)(stating that LCI2 did not seek time extensions for various specific projects); Exhibit 3 to Motion, Volume II of Deposition of Keith Giles at 477:25-478:7 (taken October 14, 2008)(Doc. 170-4)(stating that LCI2 did not submit claims for or seek change orders for delays that de la Torre caused).  LCI2 counters with a facsimile transmission that Richard Clifton, LCI2's project manager, sent to Counter-Defendant Keith Giles, who is a principal in Counter-Defendant KMG, Inc., the managing member of Wheeler Peak: "There are still lots of glitches that are taking me awhile to discover.  Both 200 & 300 still need lots of work.  Somewhere there is a predecessor that keeps the completion date the same.  In 100 schedule I think I've found most of the problems.  Richard."  Exhibit C to Response, Fax Transmittal from Keith Giles from Richard Clifton (dated March 25, 2005)("Clifton Fax").  Following this note are several pages,

listing 305 separate items with completion dates.

## PROCEDURAL BACKGROUND

Several rounds of complaints, amendments, and motions to dismiss have preceded the present motion. On January 15, 2008, LCI2 filed its first Third-Party Complaint. See Doc. 5. De la Torre moved to dismiss the Complaint on the grounds that it was conclusory. See Brief in Support of Motion to Dismiss Third Party Complaint at 2-4, filed March 14, 2008 (Doc. 18). The Court held a hearing on that motion on April 29, 2008. That same day, LCI2 moved for leave to amend its Third-Party Complaint against de la Torre. See LCI2's Motion for Leave to Amend Third-Party Complaint Against de la Torre Architects, P.A., A.I.A. at 4, filed April 29, 2008 (Doc. 31). Agreeing with de la Torre that the allegations in the Complaint were conclusory, the Court granted the motion to dismiss and dismissed the Third-Party Complaint, but without prejudice to amend, giving LCI2 ten days to file a new motion to amend. In light of the Court's rulings at the hearing, LCI2 filed a new motion to amend, see LCI2's Second Motion for Leave to Amend its Third-Party Complaint, filed May 8, 2008 (Doc. 36), and withdrew its initial motion to amend, see Motion to Withdraw Third-Party Plaintiff, LCI2's Original Motion for Leave to Amend its Third-Party Complaint at 2, filed May 16, 2008 (Doc. 42).

On June 13, 2008, the Court held a hearing on the new motion to amend. Following the hearing, the Court issued an opinion explaining its dismissal of the original Third-Party Complaint and its reasons for dismissing without prejudice. See Memorandum Opinion and Order, entered July 5, 2008 (Doc. 57). Later, the Court granted LCI2's second motion for leave to amend, allowing LCI2 to plead three causes of action against de la Torre. See Memorandum Opinion and Order at 18, entered October 29, 2008 (Doc. 103)("MOO"). The Court allowed LCI2 to add claims for professional negligence, negligent misrepresentation, and indemnification. See id.

-4-

LCI2 has since made further amendments, but none relating to de la Torre.  In its current Third-Party Complaint, LCI2 brings several claims against de la Torre.  De la Torre's claims are for: (i) professional negligence; (ii) negligent misrepresentation; and (iii) indemnification.  <u>See</u> Fourth Amended Third-Party Complaint for Damages for Breach of Contract; Contractual Indemnification; Professional Negligence; Negligent Misrepresentation; Comparative Negligence (Fault); Breach of Implied Warranties; Equitable Indemnification; Contribution; and Declaratory Relief ¶¶ 45-57, at 10-14, ¶¶ 70-77, at 17-18, filed March 24, 2009 (Doc. 194)("FATC").

De la Torre moves for summary judgment, arguing that LCI2 cannot be liable to Wheeler Peak for any damages arising out of de la Torre's alleged negligence.  In de la Torre's view, LCI2 does not have any direct claims against de la Torre, but only indemnification claims.  <u>See</u> Motion at 7-8.  According to de la Torre, the contract between Wheeler Peak and LCI2 expressly precludes LCI2 from being liable to Wheeler Peak for any of de la Torre's work, LCI2 and de la Torre do not have a contract that would allow for contractual indemnification, and thus LCI2 has no basis to seek indemnification.  <u>See</u> <u>id.</u> at 8-10.  De la Torre also contends that LCI2 failed to follow the contractual provisions for seeking extensions of time, barring it from raising any delay claims. <u>See</u> <u>id.</u> at 10.  De la Torre also argues that, because Wheeler Peak is bringing arbitration claims against it for its work on the project, allowing LCI2 to seek indemnification from de la Torre would expose de la Torre to double liability.  <u>See</u> <u>id.</u> at 10-11.  Finally, de la Torre asserts that LCI2 is impermissibly attempting to assert negligence claims which would belong to Wheeler Peak and which LCI2 lacks the standing to bring.  <u>See</u> <u>id.</u> at 11-12.

LCI2 first argues that it has a viable indemnification claim because it is not certain that the provisions on which de la Torre relies are part of the contract between Wheeler Peak and LCI2, and because it is a third-party beneficiary of the contract between Wheeler Peak and de la Torre.

See LCI2 Inc.'s Response to Third Party Defendant de la Torre Architects, P.A., A.I.A.'s Motion for Summary Judgment on LCI2's Third Amended Third Party Complaint at 8-10, filed February 27, 2009 (Doc. 185)("Response").  Next, LCI2 contends that it has evidence supporting its negligence claims that render summary judgment inappropriate.  See id. at 10-11.  Finally, LCI2 asserts that the circumstances of this case make summary judgment improper at this time and asks that the Court defer ruling under rule 56(f) of the Federal Rules of Civil Procedure.  See Response at 11-13.

In reply, de la Torre argues that LCI2 has failed to introduce any factual support for its contention that the liability-limiting provisions were not incorporated into the contract between Wheeler Peak and LCI2.  See Third Party Defendant de la Torre Architects, P.A., A.I.A.'s Reply in Support of its Motion for Summary Judgment at 7-8, filed March 16, 2009 (Doc. 188)("Reply").  De la Torre also stresses the different standards applied on summary judgment as opposed to a motion to dismiss and contends that LCI2 is unable to rely upon the Court's past rulings to defeat summary judgment here.  See id. at 8-10.  Next, de la Torre maintains that LCI2's third-party beneficiary argument is conclusory and unsupported in fact or law.  See id. at 10-11.  Turning to LCI2's negligence claims, de la Torre argues that LCI2 has not addressed its argument that LCI2 lacks standing to bring those claims and instead pointed to facts not relevant to the standing issues. See id. at 11-12.  Contending that further discovery will not allow LCI2 to cure the defects in its claims, de la Torre urges the Court to reject LCI2's request to defer ruling until later.  See id. at 12-13.

At the hearing, Mariposa Padilla Sivage, de la Torre's attorney, contended that LCI2 and de la Torre were not in a contractual relationship similar to the relationship in Amrep Southwest, Inc. v. Shollenbarger Wood Treating, Inc. (In re Consolidated Vista Hills Retaining Wall Litigation), 119

N.M. 542, 893 P.2d 438 (1995)(hereinafter "<u>Shollenbarger</u>"), and that LCI2 had not shown that de

la Torre was an active tortfeasor.  <u>See</u> Transcript of Hearing at 10:1-12:20 (Sivage & Court)(taken

April 30, 2009)("Tr.").[1]  The Court asked Tim Fields, LCI2's counsel, about the basis for LCI2's

indemnification claims.  Mr. Fields stated that he believed LCI2 was entitled to indemnification

under <u>Shollenbarger</u> and also as a third-party beneficiary to the contract between de la Torre and

Wheeler Peak.  <u>See</u> Tr. at 22:15-24:17 (Court & Fields).  The Court also asked Mr. Fields what

LCI2's direct claims were.  He responded that mostly LCI2 would be pursuing indemnity, but that

he could not "rule out that we wouldn't have some direct claims."  <u>Id.</u> at 27:12 (Fields).  The Court

pressed Mr. Fields to identify what those claims might be or the theory on which they were based.

Mr. Fields stated that he could not identify them because discovery was needed, but that there may

be some delay caused to LCI2 that is not reflected in the indemnifications claims.  <u>See id.</u> at 29:8-

30:4.

**STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate where the movant demonstrates that "there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c).  The movant has "the 'initial burden to show that there is an absence of

evidence to support the nonmoving party's case.'"  <u>Mirzai v. State of N.M. Gen. Services. Dep't</u>,

506 F.Supp.2d 767, 774 (D.N.M. 2007)(Browning, J.)(quoting <u>Munoz v. St. Mary-Corwin Hosp.</u>,

221 F.3d 1160, 1164 (10th Cir. 2000)).  In addition to showing that there are no genuine issues of

material fact, the moving party must also show that it is entitled to judgment as a matter of law.  <u>See</u>

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain different page and/or line numbers.

Once the moving party meets that initial burden, the nonmoving party bears the burden of setting "forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "For the purposes of summary judgment, the court assumes the evidence of the nonmoving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor." Velasquez v. Frontier Med., Inc., 375 F.Supp.2d at 1263 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(internal quotation marks omitted).

Rule 56(f) allows litigants to request relief from the Court when they are unable to produce facts to contest a motion for summary judgment. Rule 56(f) provides:

> **When Affidavits Are Unavailable**. If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> > (1) deny the motion;
> >
> > (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
> >
> > (3) issue any other just order.

Fed. R. Civ. P. 56(f) (bold in original). "Unless dilatory or lacking in merit," a party's 56(f) application "should be liberally treated." Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1554 (10th Cir. 1993)(internal quotation marks omitted). "The general principle of Rule 56(f) is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Price v. W. Res., Inc., 232 F.3d 779, 783 (10th Cir. 2000)(internal quotation marks omitted). Rule 56(f) does not require, however, that

summary judgment not be entered until discovery is complete.  See id. at 784.

"Rule 56(f) is not a license for a fishing expedition."  Lewis v. Ft. Collins, 903 F.2d 752, 758 (10th Cir. 1990).  To invoke rule 56(f) the party filing the affidavit must state with specificity how the desired time would allow it to meet its burden in opposing summary judgment.  See Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1554.  Rule 56(f) may not be invoked based solely upon the assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable.  See id.  The Tenth Circuit has summarized rule 56(f)'s requirements as follows:

> A prerequisite to granting relief  pursuant to Rule 56(f) is an affidavit furnished by the nonmovant.  Although the affidavit need not contain evidentiary facts, it must explain why facts precluding summary judgment cannot be presented.  This includes identifying the probable facts not available and what steps have been taken to obtain these facts.  In this circuit, the nonmovant also must explain how additional time will enable him to rebut movant's allegations of no genuine issue of fact.

Price v. W. Res., Inc., 232 F.3d at 783 (internal quotation marks, citations, and brackets omitted). "A rule 56(f) affidavit must state, with specificity, what additional discovery is believed necessary." Schaefer v. Antill, 2007 WL 709046 at *10 (D.N.M.)(Browning, J.)(citing Burke v. Utah Transit Auth. and Local 382, 462 F.3d 1253, 1264 (10th Cir. 2006) and Chavez v. Perry, 142 Fed. Appx. 325, 334 (10th Cir. 2005)).

## NEW MEXICO LAW REGARDING INDEMNIFICATION

Indemnification can take several forms in New Mexico.  "Under traditional indemnification an indemnitee is entitled to be made whole by a third party such as the primary wrongdoer." Shollenbarger, 119 N.M. at 545, 893 P.2d at 441 (citing Rio Grande Gas Co. v. Stahmann Farms, Inc., 80 N.M. 432, 436, 457 P.2d 364, 368 (1969)).  "The right to indemnification may be established through an express or implied contract, or 'may . . . arise without agreement, and by

-9-

operation of law to prevent a result which is regarded as unjust or unsatisfactory.'" <u>Shollenbarger</u>, 119 N.M. at 546, 893 P.2d at 442 (quoting W. Keeton, <u>Prosser and Keeton on the Law of Torts</u> § 51, at 341 (5th ed. 1984)). Although some preexisting legal relationship is required for traditional indemnification, the Supreme Court of New Mexico has "observe[d] that no New Mexico case actually has denied indemnification to a passive wrongdoer because of the absence of an independent, preexisting legal relationship." <u>Id.</u>

"In essence, traditional indemnification is a judicially created common-law right that grants to one who is held liable an all-or-nothing right of recovery from a third party." <u>Id.</u> at 545, 893 P.2d at 441. "The purpose of traditional indemnification is to allow a party who has been held liable without active fault to seek recovery from one who was actively at fault. Thus the right to indemnification involves whether the conduct of the party seeking indemnification was passive and not active or in pari delicto with the indemnitor." <u>Id.</u> at 546, 893 P.2d at 442. New Mexico courts have defined "active" and "passive" conduct:

> Active conduct is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had a duty to perform. Passive conduct occurs when the party seeking indemnification fails to discover and remedy a dangerous situation created by the negligence or wrongdoing of another.

<u>Id.</u> at 547, 846 P.2d at 443. Where a party fails to discover and remedy a dangerous situation, the conduct is passive; where a party does nothing after discovering the dangerous condition, the conduct is active. <u>See id.</u> Indemnification is appropriate only where the party seeking indemnification was passively negligent; if the party was actively negligent, indemnification is barred. <u>See id.</u> at 546, 846 P.2d at 442.

In addition to traditional indemnification, New Mexico also recognizes what is called

-10-

proportional indemnification.  In line with New Mexico's general policy favoring the equitable apportionment of fault, the Supreme Court of New Mexico in <u>Shollenbarger</u> "adopt[ed] the doctrine of proportional indemnification under which a defendant who is otherwise denied apportionment of fault may seek partial recovery from another at fault."  <u>Id.</u> at 552, 846 P.2d at 448.  Proportional indemnification is necessary only in situations where fault is not apportioned among parties.  For example,  actions for negligence are governed by comparative fault, which apportions fault among tortfeasors, so traditional indemnity principles apply because each tortfeasor is liable only for his or her share of the fault and will never pay more damages than his or her share.  <u>See id.</u>  Proportional indemnity applies when the one seeking indemnification "has been adjudged liable for full damages on a third-party claim that is not susceptible under law to proration of fault among joint tortfeasors."  <u>Id.</u>  "[P]roportional indemnification applies only when contribution or some other form of proration of fault among tortfeasors is not available."  <u>Id.</u> at 552-53, 846 P.2d at 448-49.  Thus, for example, when a plaintiff chooses to sue under breach of contract, a defendant "should be able to seek proportional indemnification for that percentage of fault attributable to" another.  <u>Id.</u>

## ANALYSIS

LCI2 brings three claims against de la Torre, which can be separated into two groups.  In the first group is a single indemnification claim, but this claim is based upon several different theories of indemnification.  In the second group are a pair of direct claims: one for professional negligence, and the other for negligent misrepresentation.  De la Torre raises a number of challenges to the indemnification claim, but the Court concludes that these challenges are unsuccessful, either because the challenges are legally flawed, because they require the resolution of disputed facts, or because de la Torre has failed to meet its initial burden of showing that there is no disputed issue of fact.  As to the direct claims that LCI2 brings, however, the Court agrees with de la Torre that LCI2 has not

identified any basis for de la Torre being directly liable to LCI2.  Nor does the rule 56(f) affidavit LCI2 has submitted suggest any theory of direct liability or what evidence LCI2 would like to uncover that would support such liability.  Accordingly, the Court will deny the motion with respect to the indemnification claim, but grant the motion with respect to the professional negligence and negligent misrepresentation claims.

## I.     THE COURT WILL NOT GRANT SUMMARY JUDGMENT ON LCI2'S INDEMNIFICATION CLAIM.

In the briefing and oral argument on this motion, the parties do not always clearly delineate what form of indemnity they are contesting or defending.  As the Court reads LCI2's allegations, LCI2 bases its indemnification claims on three theories: (i) "contractual indemnity"; (ii) "common-law indemnity"; which the Court reads as a claim for traditional indemnification not based upon an express contract; and (iii) "equitable or proportional indemnity."  FATC ¶¶ 72-74, at 17.  While there is some jousting over the first basis for indemnification, the parties have provided the Court with little basis on which to decide which side wins.  Neither de la Torre nor LCI2 has provided the Court with the whole contract between Wheeler Peak and LCI2 and what the Court has before it is at best ambiguous; de la Torre cannot meet its burden on such a record and the Court will deny summary judgment on the contractual indemnity claim.  Proportional indemnity is the theory on which the Court dwelt the most in its earlier opinion, and nothing in the present motion persuades the Court that it should change the course set earlier.  Particularly at the hearing, de la Torre homed in on arguments that are relevant to traditional indemnity.  This belated focus, however, leaves the Court without an adequate factual record on which it can say that it should grant summary judgment on the traditional indemnity claim.  In its briefing, de la Torre marshaled several arguments that do not distinguish between any of the three theories but instead assail LCI2's indemnification claims

whole cloth.  None of these broad-based attacks on indemnity, however, are compelling.

### A.   THE COURT WILL NOT GRANT SUMMARY JUDGMENT BASED UPON THE ARGUMENTS THAT DE LA TORRE'S MOTION RAISES.

As the briefing and argument on this motion progressed, some of the issues became more focused.  Because de la Torre's motion begins with several broad challenges to the indemnity claims, however, the Court will start with those arguments.  De la Torre first argues that the contract between Wheeler Peak and LCI2 prevents LCI2 from being liable to Wheeler Peak for anything de la Torre has done, and thus forecloses any indemnification claim LCI2 might bring against it.  As LCI2 points out, however, there are doubts whether the documents containing the clause on which de la Torre relies is part of the contract between Wheeler Peak and LCI2.  De la Torre criticizes LCI2's argument on this point for relying on argument of counsel rather than admissible evidence.  There is some merit to this contention.  Since the briefing, however, the Court has decided a different motion for summary judgment in which the Court found a genuine factual dispute on this issue.  See Memorandum Opinion and Order at 10-13, entered April 13, 2009 (Doc. 201).  While de la Torre correctly asserts that, under New Mexico law, it is a court's duty to interpret and apply the terms of an unambiguous contract, the problem here is not murky language in the contract but an issue that precedes interpretation: whether the terms are part of the contract at all.  See id.[2] Summary judgment is inappropriate with the status of these provisions up in the air.

Relying on Hood v. Fulkerson, 102 N.M. 677, 699 P.2d 608 (1985), de la Torre also argues that allowing the indemnification claims to go forward here will expose it to the risk of double liability.  Wheeler Peak has brought an arbitration demand against de la Torre on grounds similar

---

[2] Indeed, as the Court noted, there is a more fundamental problem lurking behind this: whether there was even the meeting of mind necessary for the formation of a contract.  See Memorandum Opinion and Order at 13-15.

to those underlying LCI2's allegations.  "Duplication of damages or double recovery for injuries received is not permissible" under New Mexico law.  Id. at 680, 699 P.2d at 611.  While this basic principle is clear, de la Torre does not explain how LCI2's indemnification claim would need to be dismissed to avoid excessive liability.

Any risk of double liability would depend upon de la Torre being found liable to Wheeler Peak through LCI2 on indemnification and then liable to Wheeler Peak directly.  Double liability could be avoided, however, by reducing a later award to account for the earlier award.  Dismissal would not be necessary to achieve this end.  By contrast, dismissing LCI2's indemnification claim could open up LCI2 to excess liability.  A hypothetical illustrates this point.  Assume that the Court dismisses de la Torre from the case and that a jury finds that LCI2 is liable to Wheeler Peak.  The Court's ruling dismissing LCI2's indemnification claim would bar LCI2 from seeking indemnification from de la Torre.  If de la Torre were negligent and that negligence were the cause of the problems for which LCI2 is liable to Wheeler Peak, then in this situation LCI2 could not be indemnified but de la Torre might nonetheless invoke the rule that double compensation is not allowed to prevent Wheeler Peak from suing it directly over the same damages.  In the end, LCI2 would have to pay, while de la Torre escaped unscathed.  Not dismissing the indemnification claims would avoid the possibility of this outcome, without eliminating de la Torre's ability to invoke the double-compensation ban if it became necessary.

De la Torre contends that it need not be a party for the Court to apportion fault and thus the situation in this hypothetical may be avoided.  That argument is true up to a point.  As de la Torre correctly maintains, comparative fault principles can be applied to a negligence claim even if one of the tortfeasors is absent.  See Reply at 7.  Beyond negligence claims, however, LCI2 could began to risk excessive liability.  As the Court stated when allowing LCI2 to bring the current claims

-14-

against de la Torre, Wheeler Peak asserts several non-negligence claims against LCI2, and proportional indemnity or some other form of indemnity would be the potential defense against such claims.  See MOO at 15-16.  And so keeping de la Torre in the lawsuit, if there is a valid basis to do so, would help avoid the risk of creating excessive liability for LCI2, without prejudicing de la Torre from being able to assert a defense based upon not allowing double compensation if necessary down the road.

In addition to these two arguments, de la Torre also advances an argument that does not appear to cover the entirety of de la Torre's indemnification claim.  De la Torre contends that LCI2, by failing to submit requests for an extension of time to Wheeler Peak during construction, cannot bring an indemnification claim against de la Torre premised on delay damages.  On this issue, there are disputed facts.

De la Torre has submitted deposition testimony indicating that LCI2 did not request extensions. LCI2 has, however, submitted evidence indicating that it informed Wheeler Peak of new completion dates based upon various delays.  In a facsimile transmission sent to Giles, Clifton wrote: "There are still lots of glitches that are taking me awhile to discover.  Both 200 & 300 still need lots of work.  Somewhere there is a predecessor that keeps the completion date the same.  In 100 schedule I think I've found most of the problems.  Richard."  Clifton Fax at 1.  Following this note are several pages, listing 305 separate items with completion dates.  Clifton's writing that "there is a predecessor that keeps the completion dates the same," combined with the accompanying list of completion dates, implies that this communication involved changing completion dates, i.e., it could be read as requesting an extension of time.  On summary judgment, the Court must draw all reasonable inferences in the non-movant's favor.  Although de la Torre maintains that LCI2 has failed to contest a number of its asserted undisputed material facts and has failed to adequately rebut

others, de la Torre does not mention in its Reply this evidence that LCI2 has offered.  And the Court does not see any sound reason that would prevent this evidence from creating a genuine dispute whether LCI2 requested extensions of time from Wheeler Peak.

For its last argument on indemnification in the initial briefing, de la Torre argues that, even if de la Torre were negligent, without contractual indemnity, LCI2, as a contractor, cannot be liable to a third-party if it carefully followed an architect's plans and specifications.  The Court has already rejected this contention, explaining that the cases on which de la Torre relies preclude liability when a contractor is sued by third-parties for personal injuries.  See MOO at 15-16.  In this case, however, the plaintiff is not a stranger but the owner for which LCI2 was working, and the damages alleged are not for personal injuries.

### B.   THE COURT WILL NOT GRANT SUMMARY JUDGMENT BASED UPON DE LA TORRE'S LATER, MORE SPECIFIC ARGUMENTS.

After the initial motion and during the hearing on the motion, de la Torre refined its approach somewhat.  These later arguments tended to address the different foundations LCI2 has asserted as supporting indemnification, rather than the more wholesale challenges in the motion itself.  On these arguments, however, the Court also finds that it should not grant summary judgment.

In its Reply, de la Torre argues that LCI2's claim does not fall under Shollenbarger, emphasizing the chain of contracts in the supply chain that existed in Shollenbarger.  At the hearing, De la Torre put somewhat of a new twist on its argument and argued that a main issue to be decided was whether LCI2 was an active or a passive tortfeasor.   Although de la Torre views these issues as being relevant to any non-contractual indemnification, their relevance is more narrow than that.  These distinctions remain in New Mexico law, but are part of the doctrine of traditional indemnification.  See Shollenbarger, 119 N.M. at 545-49, 893 P.2d at 441-45 (discussing traditional

indemnification).   These issues do not arise in the context of proportional indemnification. Proportional indemnification is meant to fill in the gaps in traditional indemnification and similar schemes; in adopting the doctrine, the Supreme Court of New Mexico was "filling a void in the overall picture that contemplates proration of liability among all those at fault." Id. at 553, 893 P.2d at 449.  As this Court noted in its earlier opinion, LCI2 can use comparative negligence as a defense against any negligence claims Wheeler Peak asserts and thus did not "allow LCI2 to amend its Third-Party Complaint to assert indemnification for any negligence for which it may be held liable to Wheeler Peak."  MOO at 15.   Comparative negligence, however, would not be a defense to Wheeler Peak's other claims, such as breach of warranty, and so the Court allowed LCI2 to raise a proportional indemnification claim.  See id. at 15-17.  De la Torre's new arguments do not cast doubt on the Court's previous ruling with regard to proportional indemnity.   Indeed, the new arguments barely address proportional indemnity, which was the main issue the Court discussed when allowing LCI2 to amend its Complaint.  Nothing in de la Torre's motion or oral argument creates a basis for finding that proportional indemnification would not be an appropriate claim for LCI2 to raise here.

At the hearing, the Court voiced its concerns about how a party can avoid proportional indemnification claims before a trial.  Although the Court sees nothing here that would warrant summary judgment on proportional indemnity, the Court notes that it believes it is possible. Proportional indemnity is not an invincible doctrine incapable of being resolved pre-trial.  Where there is no evidence that a third-party defendant's actions were relevant to the basis of a defendant's liability to a plaintiff, summary judgment could be granted.  Summary judgment could also be granted where the third-party defendant chooses to, in effect, step into the defendant's shoes and contest the underlying primary basis of liability.  Without the possibility of liability, there is no basis

-17-

for indemnification.  Finally, proportional indemnification is a doctrine of last resort, so in situations where a would-be indemnitee is adequately protected through more traditional means, a proportional indemnification claim would be inappropriate.

De la Torre's arguments are more appropriate for contesting traditional indemnification.  On this point, possibly because of when the issue was first raised, the record is inadequate for granting summary judgment.  De la Torre contests both the existence of a legal relationship that could support indemnification and whether LCI2 is a passive tortfeasor entitled to invoke traditional indemnification.

As to the first point, the record is more developed, but this point nonetheless favors LCI2.  True, LCI2 lacks a direct contractual relationship with de la Torre.  LCI2's contract with Wheeler Peak, however, required it to follow de la Torre's architectural designs.  Although de la Torre argues that the facts here are different than Shollenbarger -- which is true of course -- the specific factual scenario in Shollenbarger is not the sole boundaries of what can be a preexisting legal relationship.  De la Torre stresses that the decision in Shollenbarger was "based upon the relationship between a general contractor, subcontractor and owner."  Reply at 10.  De la Torre thus contends that the relationship between it and LCI2 is distinct from the relationship present in Shollenbarger.  Amrep, the plaintiff, was a homebuilder who had contracted for pressure-treated lumber from a company that in turn contracted with another company.  See 119 N.M. at 544, 893 P.2d at 440.  Nothing in the facts recited in the opinion indicates that Amrep was aware at the time that the eventual defendant and not Baldridge, the company Amrep with which contracted, had entered into a contract to provide pressure-treated lumber.  The situation was thus essentially one of a supply chain, and not truly a standard contractor-subcontractor and then sub-sub-contractor relationship, such as many of the parties in this case have.  Given that de la Torre was supplying plans on which LCI2 had to

rely, and given that the Court has found the economic-loss rule to not prevent claims against an architect in this scenario, the Court does not see the facts here as being materially different from those in Shollenbarger.

Neither party has addressed, outside Shollenbarger, what the scope of the preexisting legal relationship required for indemnification might be. New Mexico generally follows the Restatement (Second) of Torts approach. See Shollenbarger at 119 N.M. at 546, 893 P.2d at 442. Several traditional bases for indemnity that are described in the Restatement might apply here. Indemnification might be allowed where "[t]he indemnitee acted pursuant to directions of the indemnitor and reasonably believed the directions to be lawful"; where "[t]he indemnitee was induced to act by a misrepresentation on the part of the indemnitor, upon which he justifiably relied"; where "[t]he indemnitor created a dangerous condition of land or chattels as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect"; or where "[t]he indemnitor was under a duty to the indemnitee to protect him against the liability to the third person." Restatement (Second) of Torts § 886B(2)(b), (c), (e) & (f). With LCI2's need to rely on the architectural plans, LCI2 has an argument that it either acted pursuant to de la Torre's direction with regards to those designs or else was acting on misrepresentations. LCI2 also might have an argument that de la Torre's work created dangerous conditions in the project or that, based on the contract between Wheeler Peak and de la Torre -- which the Court will discuss more thoroughly below -- de la Torre has a duty to indemnify LCI2. These possibilities are not addressed in the briefing, and de la Torre has not attempted to show that it is undisputed that any of these categories would not apply. They further demonstrate that summary judgment would be inappropriate at this time.

On the second point, whether LCI2 or de la Torre can be classified as active or passive

-19-

tortfeasors, the record is almost silent.  This issue was first raised at the hearing.  Because traditional indemnification, unlike proportional indemnification, shifts all the liability to another party, the standards under this doctrine are more stringent.  Only passive tortfeasors may use traditional indemnification.  See Shollenbarger at 119 N.M. at 546, 893 P.2d at 442.  There is, however, little in the record on this point for the Court to be able to determine whether it is undisputed that LCI2 would be considered an active tortfeasor, or whether de la Torre would be a passive tortfeasor, thus making LCI2 unable to use traditional indemnification.  De la Torre has not carried its burden of showing an undisputed material fact on this issue.  Although de la Torre suggested at the hearing that LCI2 needed to show that de la Torre is an active tortfeasor, on summary judgment, it is the movant's burden to establish that the facts are undisputed.  See Munoz v. St. Mary-Corwin Hosp., 221 F.3d at 1164.

Turning to contractual indemnity, the Court again concludes that de la Torre has not met its burden of showing that it is entitled to summary judgment.  Contractual indemnity as a particular theory of indemnity at issue here first appears in the briefing when LCI2 argues that the contract between Wheeler Peak and de la Torre gives LCI2 an indemnification right as a third-party beneficiary.  See Response ¶ 16, at 6; id. at 8.  LCI2 quotes the agreement between Wheeler Peak and de la Torre as providing: "The Architect shall indemnify, defend, and hold harmless the Owner . . . and the Owner's lenders, consultants and separate contractions [sic], any of their subcontractors, sub-subcontractors, agents and employees ("Indemnitees") from and against all claims, damages, losses and expenses . . . arising out of or resulting from the Architect's acts or omissions."  Id. ¶ 16, at 6 (quoting AIA B141-1997 § 1.4.2.1).  A similar provision covers damages "arising out of or resulting from the Architect's breach of the Agreement."  Response ¶ 16, at 6 (quoting AIA B141-1997 § 1.4.2.2).  Aside from these quotations, LCI2 does not provide any further portions of the

contract; nor does de la Torre.

De la Torre has not specifically moved on contractual indemnity, but nonetheless responds to LCI2's argument. According to de la Torre, LCI2's President, Charles Landgraf, admitted that LCI2 would not be a separate contractor within the meaning of the contract. This statement, however, apparently comes in the context of discussing the contract between LCI2 and Wheeler Peak, and not in a discussion of the contract between Wheeler Peak and de la Torre. The deposition transcript reveals that Landgraf was "talking about AIA A201-1997." Deposition of Charles Michael Landgraf at 155:15 (taken July 17, 2008)(Doc. 189). De la Torre quotes AIA B141-1997. Perhaps there was a mix-up, and Landgraf asserted that the agreement between Wheeler Peak and de la Torre did not cover LCI2. From this sparse record, however, the Court cannot say that it is undisputed that LCI2 is not entitled to contractual indemnity. Language such as "separate contractor" might well cover LCI2 in the contract between Wheeler Peak and de la Torre -- LCI2 is not a signatory to that particular agreement -- and yet not cover LCI2 in its own contract with Wheeler Peak, as it would be somewhat odd to call LCI2 a separate contractor in a contract in which it is a signatory. De la Torre has therefore not shown it is entitled to summary judgment on LCI2's contractual indemnity claim.

It is worth noting that the Court is not endorsing LCI2's claim. In its earlier opinion, the Court noted without deciding that LCI2 had a plausible claim to being a third-party beneficiary to de la Torre's and Wheeler Peak's contract. See MOO at 16. Here, the Court finds that de la Torre has failed to meet its burden, largely because of an inadequate record. The language from the Court's opinion on which LCI2 primarily relies to support its claim for contractual indemnification discusses the contract as helping to provide the pre-existing legal relationship for a non-contractual indemnity claim. See id. The Court's denial of summary judgment here is not a holding that LCI2

-21-

is a third-party beneficiary.  Whether a <u>contractual</u> claim can ultimately succeed in this case is still an open question.

## II.   THE COURT WILL GRANT SUMMARY JUDGMENT ON LCI2'S CLAIMS FOR DIRECT DAMAGES.

In addition to seeking indemnification, LCI2 has brought two claims directly against de la Torre: one for professional negligence and the other for negligent misrepresentation.  De la Torre argues that these claims are attempting to, in effect, assert claims that Wheeler Peak might assert, but which LCI2 cannot.  The Court sees no evidence that would support LCI2 having direct damage claims against de la Torre.  And although LCI2 has filed a rule 56(f) affidavit requesting the Court defer ruling, neither that affidavit, nor anything else in LCI2's filings or statements at the hearing give the Court any indication what facts LCI2 would hope to find that could sustain a direct claim against de la Torre.  Summary judgment is therefore appropriate, and the Court will not defer entering summary judgment.  Should LCI2 later uncover facts that could support a direct claim, it can seek further leave to amend.

LCI2 has brought direct claims against de la Torre for negligent misrepresentation and professional negligence.  On its negligent misrepresentation claim, LCI2 does not identify any direct damages, bur rather asserts: "If and to the extent plaintiff was thereby damaged, and if and to the extent LCI2 is held liable for plaintiff's damages, LCI2 is entitled to recovers damages assessed against it from de la Torre . . . ."  FATC ¶ 57, at 14.  On its professional negligence claim, LCI2 merely asserts that "LCI2 has been damaged in an amount according to proof at time of trial."  <u>Id.</u> ¶ 52, at 14.  LCI2 has not asserted what its damages might be other than those stemming from potential liability to Wheeler Peak, what is essentially a third-party indemnification claim.  In its Response and other filings, LCI2 has also not identified what its damages might be.  Nor was LCI2

able to explain during the hearing what its direct damages might be.  Given their respective positions in the construction project, it is also difficult for the Court to imagine what direct claims LCI2 might potentially have against de la Torre.  Based upon the lack of any identifiable basis for finding that LCI2 has suffered damages directly because of de la Torre's actions, the Court would normally grant summary judgment.  LCI2, however, has submitted a rule 56(f) affidavit and requests that the Court, instead of granting summary judgment, allow LCI2 to engage in additional discovery to provide evidence to support its claims.  Ultimately, the Court concludes that the affidavit does not present any persuasive reason to defer summary judgment.

In his rule 56(f) affidavit for LCI2, Samuel Winder, co-counsel for LCI2, asserts that two of the architectural experts working on this case have provided "opinions linking de la Torre's acts and omissions to the damages claimed by Wheeler Peak and against LCI2."  Affidavit of Samuel L. Winder in Support of LCI2, Inc.'s Request for Rule 56(f) Relief ¶ 9, at 3 (executed February 27, 2009)(Doc. 185-10).  According to Mr. Winder, these experts' opinions also indicate that de la Torre failed to comply with contractual and statutory duties.  See id.  On these grounds, Mr. Winder states that

> further discovery is necessary in order to allow for the depositions of architectural experts regarding the relationship between de la Torre's alleged acts and omissions and the damages claimed by and against LCI2.  In addition, further discovery is needed to develop testimony regarding the various duties of architects in New Mexico.

Id. ¶ 10, at 3.

These statements are insufficient to forestall summary judgment.  They reveal a hope that LCI2 will discover evidence of damages that de la Torre caused it, but fail to specify what such evidence might be.  Rule 56(f) reads:

**When Affidavits Are Unavailable**. If a party opposing the motion shows by

-23-

affidavit that, for specified reasons, it cannot present facts essential to justify its
opposition, the court may:

> (1) deny the motion;

> (2) order a continuance to enable affidavits to be obtained, depositions to be
> taken, or other discovery to be undertaken; or

> (3) issue any other just order.

Fed. R. Civ. P. 56(f) (bold in original).  While rule 56(f) requests "should be liberally treated,"
Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1553, the rule "is not a license for a
fishing expedition," Lewis v. Ft. Collins, 903 F.2d at 759.  "A rule 56(f) affidavit must state, with
specificity, what additional discovery is believed necessary."  Schaefer v. Antill, 2007 WL 709046
at *10 (citing Burke v. Utah Transit Auth. and Local 382, 462 F.3d 1253, 1264 (10th Cir. 2006) and
Chavez v. Perry, 142 Fed. Appx. 325, 334 (10th Cir. 2005)).  The affidavit here fails to provide the
requisite specificity.

The affidavit here provides only a general indication that further discovery is needed,
particularly from architectural experts.  The affidavit does not explain what evidence LCI2 might
possibly uncover that could support a direct claim against de la Torre.  Instead, it effectively asks
the Court to authorize a fishing expedition in the hope that useful evidence might turn up.  That
approach is not what rule 56(f) allows.  The closest LCI2 has come to articulating what its claims
might be is that there may be some delay damages not subject to indemnification.  Aside from this
information not being part of the affidavit itself, such a showing still falls short of "identifying the
probable facts not available" to LCI2.  Price v. W. Res., Inc., 232 F.3d at 783 (internal quotation
marks omitted).  LCI2 has asserted claims against de la Torre, but is unable to explain, even in the
abstract, what evidence would support those claims.  In these circumstances, LCI2 has not carried
its burden of identifying with specificity the additional discovery it would need to undertake to

defeat summary judgment here.  The Court will therefore grant summary judgment on the direct claims that LCI2 asserts against de la Torre for professional negligence and negligent misrepresentation.

**IT IS ORDERED** that de la Torre Architect Architects, P.A., A.I.A.'s Motion for Summary Judgment on LCI2's Third Amended Third Party Complaint is granted in part and denied in part. The Court will grant the motion with respect to the professional negligence and negligent misrepresentation claims, but deny the motion with respect to the indemnification claim.

UNITED STATES DISTRICT JUDGE

*Counsel*:

Donald A. Walcott
Charles V. Henry, IV
Holly Hart
Kris Knutson
Scheuer, Yost & Patterson
Santa Fe, New Mexico

    *Attorneys for Plaintiff and Counter-Defendant Wheeler Peak, LLC*

Alan Maestas
Lee Boothby
Maestas Baker Boothby & Warren, P.C.
Taos, New Mexico

-- and --

Tim L. Fields
Samuel L. Winder
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendant, Counterclaimaint, and Third-Party Plaintiff*
      *L.C.I.2, Inc.*

-25-

Todd Schwarz
H. Brook Laskey
Bryan Hatherly
Miller Stratvert, P.A.
Albuquerque, New Mexico

    *Attorneys for Third-Party Defendant Donner Plumbing and Heating Inc.*

Robert J. Perovich
Mariposa Padilla Sivage
Keleher & McLeod
Albuquerque, New Mexico

    *Attorneys for Third-Party Defendant De La Torre Architects, P.A., A.I.A.*

Steven L. Gonzales
Silva & Saucedo, P.C.
Albuquerque, New Mexico

    *Attorney for Third-Party Defendant Parker Excavating, Inc.*

Robert Bruce Collins
Holly R. Harvey
Law Office of Robert Bruce Collins
Albuquerque, New Mexico

    *Attorneys for Third-Party Defendant JC Constructors, Inc.*

Michael S. Jahner
Yenson, Lynn, Allen & Wosick, P.C.
Albuquerque, New Mexico

-- and --

J. Michael Roberts
Jason R. Scott
Shook Hardy & Bacon LLP
Kansas City, Kansas

    *Attorneys for Third-Party Defendant Simplex Grinnell, LP*

Julie J. Vargas
Hunt & Davis, P.C.
Albuquerque, New Mexico

*Attorneys for Third-Party Defendants David Born, Carl Davis, Lisa Davis,*
*Melissa Deaver-Rivera, Kathy Diklich, Roy Diklich, Joseph Forbess,*
*Lisa Forbess, Phyllis Galanthay, Ted Galanthay, Angela Nix and Kent Nix*