**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

WHEELER PEAK, LLC,
an Illinois limited liability company,

        Plaintiff,

vs.                                                                                                    No. CIV 07-1117 JB/WDS

L.C.I.2, INC., a New Mexico Corporation,

        Defendant.

L.C.I.2, INC., a New Mexico Corporation,

        Counterclaimant,

vs.

WHEELER PEAK, LLC,
an Illinois limited liability company,
KMG, INC., an Illinois Corporation, and
KEITH GILES, an individual,

        Counter-Defendants.

L.C.I.2, INC., a New Mexico Corporation,

        Third-Party Plaintiff,

vs.

DONNER PLUMBING AND HEATING, INC.,
JC CONSTRUCTORS, INC., and DE LA
TORRE ARCHITECTS, P.A., A.I.A., and
Simplex Grinnell, LP, Melissa Deaver-Rivera,
Carl Davis and Lisa Davis, husband and wife,
David Borns, Roy Diklich and Kathy Diklich,
husband and wife, Kent Nix and Angela Nix,
husband and wife, Joseph Forbess and Lisa Forbess,
husband and wife, and Ted Galanthay and Phyllis Galanthay,
husband and wife,

        Third-Party Defendants.

DONNER PLUMBING AND HEATING, INC.,

       Third-Party Plaintiff,

vs.

PARKER EXCAVATING, INC.,

       Third-Party Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on de la Torre Architects' Motion in limine to Limit Charles M. Landgraf's Testimony, filed August 14, 2009 (Doc. 316)("de la Torre's Motion"). The Court held a hearing November 23, 2009. The primary issues are: (i) whether an expert witness who is not an architect may testify about the standard of care for architects; and (ii) whether the president of a corporate party may testify about another party's alleged contribution to construction delays based upon information the witness obtained as president and by his participation in the construction project. The Court will allow Landgraf to give most of the testimony in his report and in his deposition because he will largely be pointing out Defendant and Counter Claimant L.C.I.2, Inc.'s position based on information he obtained as LCI2's president and by participating in the project, and because he will not be testifying about the quantification of delay damages. The Court, therefore, after careful review of the record and the parties' arguments, will grant in part and deny in part de la Torre Architects' Motion in limine to Limit Charles M. Landgraf's Testimony.

## FACTUAL BACKGROUND

Mr. Charles M. Landgraf is a licensed general contractor and president of LCI2. See Expert Report of Charles M. Landgraf ¶ 1, Ex. A to de la Torre's Motion at 1, filed August 14, 2009 (Doc. 316-2)("Landgraf's expert report"). Landgraf is not an architect. See Deposition of Charles

Michael Landgraf at 57:4-14, 105:24 (taken July 17, 2008), Ex. B to de la Torre's Motion at 3 and 5, filed August 14, 2009 (Doc. 316-3)("Landgraf's deposition").  LCI2 designated Landgraf as an expert general contractor in this action.  See Defendant LCI2, Inc.'s Response to de la Torre Architects' Motion in limine to Limit Charles M. Landgraf's Testimony at 2, filed September 11, 2009 (Doc. 360) (LCI2's Response).  Landgraf prepared an expert opinion regarding de la Torre. See Landgraf's expert report at 5-7.

## PROCEDURAL BACKGROUND

On August 14, 2009, de la Torre filed its motion in limine to limit Landgraf's testimony. See Doc. 316.  LCI2 filed its response on September 11, 2009.  See Doc. 360.  De la Torre filed its reply on September 29, 2009.  See de la Torre Architects' Reply to LCI2's Response to de la Torre Architects' Motion in limine to Limit Charles M. Landgraf's Testimony (docket 316) (Doc. 373). The Court held a hearing on de la Torre's Motion on November 23, 2009.  See Clerk's Minutes at 1, filed November 23, 2009 (Doc. 433).

At the hearing, the Court stated it was concerned about Landgraf commenting on certain issues about the standard of care for an architect, given that Landgraf is not an architect.  See Hearing Transcript at 10:21-24 (taken November 23, 2009) ("Tr.") (Court).[1]  The Court identified the following portions of Landgraf's expert report that the Court was inclined to strike and not to allow Landgraf to testify about:

(i) Paragraph 12 on page 5 which reads: "In my opinion, de la Torre's conduct fell below the standard of care, from my perspective as a general contractor."

---

[1] The Court's citations to the transcript of the November 23, 2009 hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

      (ii)  Paragraph 14 on page 6 which reads: "De la Torre was professionally negligent by failing to administer the project and administer the contract between the owner and contractor."

      (iii)  The first nine words of paragraph 16 on page 6 which read: "As a result of de la Torre's professional negligence,"

      (iv)  The second word in the second line of paragraph 27 on page 8: "professional."

See Tr. at 11:2-20 (Court). The Court asked LCI2: "Mr. Fields, can you live with things I've taken out of here?" Tr. at 20:24-25 (Court). LCI2 responded: "Yes, Your Honor, we can live with that." Tr. at 21:1 (Fields).

## **FEDERAL LAW REGARDING EXPERT TESTIMONY**

      Rule 701 of the Federal Rules of Evidence provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. "[W]ithin the scope of [rule 702] are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called 'skilled' witnesses such as bankers or landowners testifying to land values."  Fed. R. Evid. 702 advisory committee's note.

## NEW MEXICO LAW REGARDING EXPERT TESTIMONY IN PROFESSIONAL MALPRACTICE CASES[2]

New Mexico law generally requires expert testimony to establish professional malpractice. "In professional negligence cases, both breach of the implied warranty to use reasonable skill under contract law and negligence resulting in a finding of malpractice must be proved by expert testimony *unless* the case is one where exceptional circumstances within the common experience or knowledge of a layman are present." Adobe Masters, Inc. v. Downey, 118 N.M. 547, 549, 883 P.3d 133, 135 (1994)(italics in original)(stating that no expert is needed to determine whether a party has totally breached a specific term of a professional service contract which does not call into question the performance standards of the profession and noting no error where the district court instructed jury to consider evidence presented by architects testifying as expert witnesses to determine whether architect applied the knowledge and skill required by law); Cantrell v. Dendahl, 83 N.M. 583, 586, 494 P.2d 1400, 1403 (N.M. Ct. App. 1972)("[P]laintiff, Mr. Cantrell, who is an architect, was permitted to express his opinion that the step was not consistent with standard architectural practice because it was unsafe."). The Supreme Court of New Mexico has stated in the context of doctors, for instance, that "[n]egligence of a doctor in a procedure which is peculiarly within the knowledge of doctors, and in which a layman would be presumed to be uninformed, would demand medical testimony as to the standard of care." Pharmaseal Labs., Inc. v. Goffe, 90 N.M. 753, 758, 568 P.2d 589, 594 (1977). Similarly, when other professional activities, peculiarly within the knowledge of

---

[2] In this diversity action, the Court realizes that it must apply its own rules of evidence governing the admissibility of expert testimony, see Sims v. Great Am. Life Ins. Co., 469 F.3d 870, 883 (10th Cir. 2006), but also finds that whether a plaintiff must provide expert testimony to establish the elements of his claims is a matter governed by the state's substantive law, see Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 852 (3d Cir. 1995)("[T]he requirement of expert testimony on issues of the type involved here is a matter of substantive law governing a plaintiff's burden of proof.").

such professionals, are alleged to have been performed negligently, New Mexico law appears to demand expert testimony to establish the appropriate reasonable standard of care. See Adobe Masters, Inc. v. Downey, 118 N.M. at 549, 883 P.2d at 136 (citing Pharmaseal Labs., Inc. v. Goffe in a non-medical professional-negligence context).

## ANALYSIS

De la Torre argues that Landgraf is not qualified to testify regarding the standard of care for architects and has not presented any analysis or basis to support his opinions regarding delay damages. LCI2 contends that Landgraf is qualified to testify regarding a project architect's duties on a construction project and submit opinions regarding de la Torre's contribution to delays on the Wheeler Peak condominium project. LCI2 also asserts that some of the opinions de la Torre seeks to exclude are admissible lay opinion.

De la Torre contends that Landgraf is not qualified to offer opinions regarding the standard of care for architects because Landgraf is not an architect and has no architectural training. See de la Torre's Motion at 3-4. LCI2 admits that Landgraf is not qualified to comment on the technical aspects of architecture, see LCI2's Response at 4, and did not object to the Court striking from Landgraf's expert report opinions, and not allowing Landgraf to opine, about an architect's standard of care and professional negligence. See Tr. at 11:2-20 (Court), 20:24-25 (Court), and 21:1 (Fields). "With regard to the technical aspects of the architect's responsibilities LCI2 designated Garlan Bryan, an architect, as its expert witness." LCI2's Response n.1, at 4.

De la Torre also contends that Landgraf has not presented any analysis or basis to support his opinions regarding delay damages. See de la Torre's Motion at 4-7. The Court has gone through Landgraf's expert report several times, see Tr. at 10:24 (Court), and finds that, while Landgraf discusses delays, he does not discuss damages, see Tr. at 13:24-25 (Court). De la Torre indicated

-6-

that Landgraf's report is not clear and that related testimony in Landgraf's deposition makes improper assertions. See Tr. at 15:2-22 (Gooch). The Court then invited de la Torre to point out those portions of Landgraf's deposition about which de la Torre believes Landgraf should not testify. See Tr. at 16:2-4 (Court). De la Torre pointed to two pages from Landgraf's deposition and argued that Landgraf's assertions that de la Torre contributed to the delay are improper because they are not supported by any analysis and are not lay testimony. See Tr. at 16:5-20:20 (Gooch). LCI2 stated that, while Landgraf will testify about delays, he will not testify about quantifying delay damages. See Tr. at 25:23-26:3 (Fields). The Court will allow Landgraf to give the testimony in his report, except for the portions the Court struck earlier in this Memorandum Opinion and Order, and in his deposition because he will largely be pointing out LCI2's position based on information he obtained as LCI2's president and by participating in the project, and because he will not be testifying about the quantification of delay damages. See Tr. at 26:9-14 (Court).

     **IT IS ORDERED** that de la Torre Architects' Motion in limine to Limit Charles M. Landgraf's Testimony is granted in part and denied in part.

                                                 _____
                                                 UNITED STATES DISTRICT JUDGE

*Counsel*:

Donald A. Walcott
Holly Hart
Kris C. Knutson
Scheuer, Yost & Patterson
Santa Fe, New Mexico

     *Attorneys for Plaintiff and Counter-Defendant Wheeler Peak, LLC*

Scott P. Hatcher
Hatcher & Tebo, P.A.
Santa Fe, New Mexico

 *Attorneys for Proposed Intervenor-Plaintiffs American Hallmark Insurance Company of Texas and Clarendon National Insurance Company*

Alan Maestas
Lee Boothby
Maestas Baker Boothby & Warren, P.C.
Taos, New Mexico

-- and --

Tim L. Fields
Samuel L. Winder
Brian K. Nichols
Cristin M. Heyns
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

 *Attorneys for Defendant, Counterclaimaint, and Third-Party Plaintiff L.C.I.2, Inc.*

Todd Schwarz
H. Brook Laskey
Bryan Hatherly
Miller Stratvert, P.A.
Albuquerque, New Mexico

 *Attorneys for Third-Party Defendant and Third-Party Plaintiff Donner Plumbing and Heating Inc.*

Robert J. Perovich
Mariposa Padilla Sivage
Tina Muscarella Gooch
Keleher & McLeod
Albuquerque, New Mexico

 *Attorneys for Third-Party Defendant de La Torre Architects, P.A., A.I.A.*

Steven L. Gonzales
Anita M. Kelley
Silva, Saucedo & Gonzales, P.C.
Albuquerque, New Mexico

> *Attorney for Third-Party Defendant Parker Excavating, Inc.*

Robert Bruce Collins
Holly R. Harvey
Law Office of Robert Bruce Collins
Albuquerque, New Mexico

> *Attorneys for Third-Party Defendant JC Constructors, Inc.*

Michael S. Jahner
Yenson, Lynn, Allen & Wosick, P.C.
Albuquerque, New Mexico

-- and --

J. Michael Roberts
Jason R. Scott
Shook Hardy & Bacon, LLP
Kansas City, Kansas

> *Attorneys for Third-Party Defendant Simplex Grinnell, LP*

Julie J. Vargas
Hunt & Davis, P.C.
Albuquerque, New Mexico

> *Attorneys for Third-Party Defendants David Born, Carl Davis, Lisa Davis, Melissa Deaver-Rivera, Kathy Diklich, Roy Diklich, Joseph Forbess, Lisa Forbess, Phyllis Galanthay, Ted Galanthay, Angela Nix, and Kent Nix*