# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

WHEELER PEAK, LLC,
an Illinois limited liability company,

        Plaintiff,

vs.   No. CIV 07-1117 JB/WDS

L.C.I.2, INC., a New Mexico Corporation,

        Defendant.

L.C.I.2, INC., a New Mexico Corporation,

        Counterclaimant,

vs.

WHEELER PEAK, LLC,
an Illinois limited liability company,
KMG, INC., an Illinois Corporation, and
KEITH GILES, an individual,

        Counter-Defendants.

L.C.I.2, INC., a New Mexico Corporation,

        Third-Party Plaintiff,

vs.

DONNER PLUMBING AND HEATING, INC.,
JC CONSTRUCTORS, INC., and DE LA
TORRE ARCHITECTS, P.A., A.I.A., and
Simplex Grinnell, LP, Melissa Deaver-Rivera,
Carl Davis and Lisa Davis, husband and wife,
David Borns, Roy Diklich and Kathy Diklich,
husband and wife, Kent Nix and Angela Nix,
husband and wife, Joseph Forbess and Lisa Forbess,
husband and wife, and Ted Galanthay and Phyllis Galanthay,
husband and wife,

      Third-Party Defendants.

DONNER PLUMBING AND HEATING, INC.,

      Third-Party Plaintiff,

vs.

PARKER EXCAVATING, INC.,

      Third-Party Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant LCI2, Inc.'s Motion for Partial Summary Judgment and Memorandum Brief in Support on Count IV of Wheeler Peak's First Amended Complaint, filed August 14, 2009 (Doc. 321)("LCI2's motion"). The Court held a hearing November 23, 2009. The primary issue is whether an architect that is not a general contractor can provide expert testimony regarding whether a general contractor's conduct fell below the standard of care required of general contractors. The Court finds that Wheeler Peak does not need expert testimony as to the applicable standard of care for a general contract, and thus will deny LCI2's motion for partial summary judgment on Count IV of Wheeler Peak's First Amended Complaint.

## FACTUAL BACKGROUND

Count IV of Wheeler Peak's First Amended Complaint states:

### Negligence of LCI

      50.    Wheeler Peak incorporates by reference the Jurisdictional Allegations, General Allegations, and the allegations contained in Counts I, II and III as if fully set forth herein.

      51.    LCI owed Wheeler Peak a duty to exercise ordinary care when it constructed the residence upon Wheeler Peak's Property.

-2-

>  52.    LCI owed Wheeler Peak a duty to exercise ordinary care with respect to his management of the Construction Project.
>
>  53.    As evidenced by the construction defects and deficiencies described in the General Allegations, LCI failed to exercise ordinary care in the construction of the Condominium.
>
>  54.    As evidenced by the construction defects and deficiencies described in the General Allegations, LCI failed to exercise ordinary care in the management of the Construction Project.
>
>  55.    LCI's failure to use ordinary care in the construction of the Condominium has caused damage to Wheeler Peak in an exact amount to be determined at trial.
>
>  56.    LCI's failure to use ordinary care in the management of the construction project has caused damage to Wheeler Peak in an exact amount to be determined at trial.

First Amended Complaint for Breach of Contract, Breach of Warranty, Negligence, and Unfair Practices at 9-10, filed June 15, 2009 (Doc. 243)("FAC").  Wheeler Peak's FAC makes the following general allegations against LCI2:

>  a) "The [underground water] leaks [in the sewage and domestic water systems] were the result of defects in the Work performed by LCI[2] and its subcontractors." (Doc. No. 243 at ¶¶20-21).
>
>  b) "In February of 2007, a fire from improperly sheltered meters and improperly installed carpet caused over $500,000.00 worth of repairs to be done." (Doc. No. 243 at ¶27).
>
>  c) "In December 2006 and May 2007, the Condominium flooded as a consequence of LCI[2]'s failure to properly insulate the water lines to the Condominium." (Doc. No. 243 at ¶28).
>
>  d) "LCI[2] and its subcontractors failed to properly design heaters for the boiler rooms in the units within the condominium. As a consequence of such failure, Wheeler Peak was forced to purchase individual heaters for each unit's boiler room." (Doc. No. 243 at ¶29).
>
>  e) "On February 18, 2007, Wheeler Peak discovered damage to the water lines in one of the buildings in the Condominium caused by the negligence of LCI[2] and its subcontractor." (Doc. No. 243 at ¶30).

> f) "The failure of LCI[2] and its subcontractor to properly design and install the Condominium's fire suppression system and pump house has caused Wheeler Peak significant damages."

LCI2's motion at 3-4. "LCI2 designated Chuck Landgraf as its General Contractor expert and circulated Mr. Landgraf's expert report to all counsel on November 21, 2008." LCI2's motion ¶ 4, at 4.

Landgraf's report gives his expert opinion that "LCI2's conduct on the Wheeler Peak project did not fall below the standard of care required of a general contractor." Id. ¶ 5, at 4. LCI2 asserts that "Wheeler Peak did not designate a General Contractor expert prior to the Court's deadline." LCI2's motion ¶ 6, at 4. Wheeler Peak admits that it has not designated a licensed general contractor as an expert in this case, but disputes LCI2's assertion because "LCI2 does not explain what is meant by the phrase 'General Contractor expert.'" Wheeler Peak's Response to LCI2's Motion for Partial Summary Judgment at 1, filed September 9, 2009 (Doc. 358 ("Wheeler Peak's Response").

Wheeler Peak states that it designated Greg Hicks, an architect, "to provide opinion testimony regarding the standard of care of a general contractor in New Mexico, and whether LCI2's construction of the project met that standard." Id. Wheeler Peak does not dispute LCI2's statement that, "to provide general contracting services in the State of New Mexico, one must become a licensed general contractor through the New Mexico Regulation and Licensing Department, Construction Industries Division." LCI2's motion ¶ 7, at 4. During Hicks' deposition, de la Torre's counsel asked Hicks: "Let me ask you, do you consider yourself to be an expert in construction contracting?" LCI2's motion ¶ 8, at 5. Hicks replied: "No. I am aware of the architectural responsibilities related to construction contracting, but I am not a contractor." Id. When asked if "he had ever been licensed in any state or jurisdiction as a contractor," Hicks answered: "No." Id.

Wheeler Peak disputes these allegations because "LCI2 does not define 'general contracting services'" and "does not cite a provision of CILA [the Construction Industries Licensing Act, N.M.S.A. 1978, § 60-13-3 (1999)] for the definition of 'providing general contracting services.'" Wheeler Peak's Response at 2.

## PROCEDURAL BACKGROUND

LCI2 filed a motion seeking partial summary judgment on count IV of Wheeler Peaks' first amended complaint on August 14, 2009. See Doc. 321. LCI2 argues that, because Wheeler Peak did not designate a general contracting expert witness, Wheeler Peak "cannot show that LCI2's work on the Wheeler Peak condominium project fell below the standard of care of a reasonable General Contractor, [and] therefore LCI2 is entitled to judgment as a matter of law" on Wheeler Peak's negligence claim against LCI2. Id. at 2. Wheeler Peak filed its response on September 9, 2009, stating that its architectural expert is designated and qualified "to provide opinion testimony regarding the standard of care of a general contractor in New Mexico, and whether LCI2's construction of the Project met that standard." Wheeler Peak's Response at 1-3. LCI2 filed its reply on October 19, 2009. See Doc. 400.

The Court held a hearing on LCI2's motion on November 23, 2009. See Clerk's Minutes at 1, filed November 23, 2009 (Doc. 433). At the hearing, LCI2, see Hearing Transcript at 92:3-97:7, 103:22-109:13, and 113:21-115:9 (taken November 23, 2009)("Tr.")(Heyns),[1] Parker Excavating, see Tr. at 97:11-102:21 (Gonzales), de la Torre, see Tr. at 109:17-110:1 (Perovich), LCI2, see Tr. at 110:2-8 (Fields), and Wheeler Peak, see Tr. at 110:18-113:18 (Walcott), addressed

---

[1]The Court's citations to the transcript of the November 23, 2009 hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

the Court.  Cristin Heyns, attorney for LCI2, argued that Wheeler Peak cannot provide expert testimony that LCI2's handling of the construction project fell below the standard of care, as New Mexico law requires in this case, see Tr. at 92:5-96:19 (Court, Heyns), and that an architect cannot satisfy this requirement by testifying to the standard of care for a general contractor, see Tr. at 96:22-97:7 (Heyns).  Steven Gonzales, speaking for Parker Excavating, argued that there was no genuine issue of fact regarding negligence during installation of the water and sewer infrastructure. See Tr. at 99:12-100:18 (Gonzales).  Donald Walcott, Wheeler Peak's attorney, argued that it was undecided under New Mexico law whether a negligence claim against a general contractor was a professional malpractice claim, requiring expert testimony regarding the standard of care.  See Tr. at 110:18-24 (Walcott).  Mr. Walcott further argued that, to the extent that New Mexico law does require expert testimony in this context, the Court should consider an architect competent to give that testimony.  See Tr. at 110:25-113:16 (Walcott).

## LAW REGARDING ARCHITECTS AND CONTRACTORS

An "architect" is "any individual registered under the Architectural Act to practice architecture."  N.M.S.A. 1978, § 61-15-2A.  "Architectural services" include:

> predesign services, programming and planning, providing designs, drawings, specifications, other technical submissions, administration of construction contracts, coordination of technical submissions prepared by others and such other professional services as may be necessary to the planning, progress and completion of any architectural services. An architect who has complied with all of the laws of New Mexico relating to the practice of architecture has a right to engage in the incidental practice of activities properly classifiable as engineering; provided that the architect does not hold himself out to be an engineer or as performing engineering services and further provided that the architect performs only that part of the work for which the architect is professionally qualified and uses qualified professional engineers, architects or others for those portions of the work in which the contracting architect is not qualified.

N.M.S.A. 1978, § 61-15-2B.  "'[C]onstruction administration', when performed by an architect,

means the interpretation of the drawings and specifications, the establishment of standards of acceptable workmanship and the observation of construction to determine its consistency with the general intent of the construction documents." N.M.S.A. § 61-15-2D.

A "contractor" is "any person who undertakes . . . contracting." N.M. Stat. Ann. §60-13-1(A). "Contracting includes constructing, altering, repairing, installing or demolishing any . . . building . . . ." N.M.S.A. 1978, § 60-13-1A(2). "Contractor" includes:

> a construction manager who coordinates and manages the building process; who is a member of the construction team with the owner, architect, engineer and other consultants required for the building project; and who utilizes his skill and knowledge of general contracting to develop schedules, prepare project construction estimates, study labor conditions and advise concerning construction

N.M.S.A. 1978, § 60-13-1C.

## LAW REGARDING EXPERT TESTIMONY[2]

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and

---

[2] In this diversity action, the Court realizes that it must apply its own rules of evidence governing the admissibility of expert testimony, see Sims v. Great Am. Life Ins. Co., 469 F.3d 870, 883 (10th Cir. 2006), but also finds that whether a plaintiff must provide expert testimony to establish the elements of his claims is a matter governed by the state's substantive law, see Walley v. Sakura, 804 F.2d 580, 585 (10th Cir. 1986)("Expert testimony is required generally in medical malpractice cases under the state law"). See also Beaudette v. Louisville Ladder, Inc., 462 F.3d 22, 27 (1st Cir. 2006)("In a diversity action, whether expert testimony is required is a matter of state law."); Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 852 (3d Cir. 1995)("[T]he requirement of expert testimony on issues of the type involved here is a matter of substantive law governing a plaintiff's burden of proof.")(citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 750-52 (3d Cir. 1994)); Rodriguez v. Pacificate of Texas, Inc., 980 F.3d 1014, 1020 (5th Cir. 1993)("When state law requires a plaintiff to prove negligence by expert testimony, summary judgment can be granted where the defendant presents expert affidavits and the plaintiff presents no such affidavits.").

>    (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  An expert must possess a verifiable expertise in the subject matter for which he seeks to testify.  See  Fed. R. Evid. 702.  The expert is also "required to possess such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth."  LifeWise Master Funding v. Telebank, 374 F.3d 917, 928 (10th Cir. 2004).  The trial court "has broad discretion in determining whether or not to admit expert testimony, and [the Court of Appeals for the Tenth Circuit] review[s] a decision to admit or deny such testimony only for abuse of discretion."  Orth v. Emerson Elec. Co., 980 F.2d 632, 637 (10th Cir. 1992).

   "In professional negligence cases, both breach of the implied warranty to use reasonable skill under contract law and negligence resulting in a finding of malpractice must be proved by expert testimony *unless* the case is one where exceptional circumstances within the common experience or knowledge of a layman are present."  Adobe Masters, Inc. v. Downey, 118 N.M. 547, 549, 883 P.3d 133, 135 (1994)(italics in original).  In Adobe Masters, Inc. v. Downey, the Supreme Court of New Mexico stated that no expert is needed to determine whether a party has totally breached a specific term of a professional service contract that does *not* call into question the performance standards of the profession.  See 118 N.M. at 549, 883 P.2d at 135.  The Supreme Court in Adobe Masters, Inc. v. Downey noted no error where the district court instructed the jury to consider evidence presented by architects testifying as expert witnesses to determine whether architect applied the knowledge and skill required by law.  See id.  The Supreme Court of New Mexico affirmed, stating: "If Downey's claim was, indeed, that Rappuhn's breach was also one of express warranties within the experience of laymen, Downey could have requested such an instruction

notwithstanding the fact that his case was limited to a negligence theory. On review of the record, it appears that Downey did not request any other instructions than the ones given. He cannot now complain of error." Id.

## ANALYSIS

LCI2 argues that it is entitled to summary judgment on Wheeler Peak's negligence claim because Wheeler Peak failed to designate a general contractor expert and thus cannot refute LCI2's expert report, cannot establish the requisite standard of care for a general contractor, nor establish a deviation from the standard of care by LCI2. Wheeler Peak contends that its architecture expert is qualified to testify regarding the standard of care for general contractors.

Wheeler Peak states that its expert, Hicks, is a licensed architect but concedes that he is not a general contractor. Wheeler Peak's Response at 2-3. Wheeler Peak, quoting the New Mexico Architectural Act, see N.M.S.A. § 61-15-2D, contends that an architect's duties include "the establishment of standards of acceptable workmanship and the observation of construction to determine its consistency with the general intent of the construction documents." Wheeler Peak's Response at 3. Wheeler Peak asserts that:

> For more than thirty years, Mr. Hicks has established the standards of acceptable workmanship and observed construction to determine its consistency with the general intent of the construction documents. Therefore, Mr. Hicks, as an experienced licensed architect who has performed construction administration services, is qualified to opine regarding whether LCI2's work meets an acceptable standard and whether that work is in compliance with the general intent of the construction documents.

Wheeler Peak's Response at 3. Wheeler Peak contends that Hicks is the "most qualified of the experts involved to assist the jury in determining whether LCI2 met its standard of care as a contractor in New Mexico in this case" because of Hick's thirty-five years of experience, his master's degree in architecture, his educational background in mathematics, science and

engineering, his working for a licensed architect before taking the licensing examination, and the several stages of examination that Hicks had to pass. Tr. at 112:4-113:16 (Walcott).

The Court finds that Wheeler Peak need not provide expert testimony to establish negligence in this case, because it finds that a general contractor is not a "professional" such that expert testimony is required to establish the proper standard of care. Black's Law Dictionary defines a professional as "[a] person who belongs to a learned profession or whose occupation requires a high level of training and proficiency." Black's Law Dictionary at 1329 (9th ed. 2009). The traditional "learned professions" were law, medicine, and the ministry -- all professions that involved many years of formal study as well as substantial experience applying one's learning to the real world. Black's Law Dictionary at 1329 (defining "profession").

> Learned professions are characterized by unusual learning, the existence of confidential relations, the adherence to a standard of ethics higher than that of the market place, and in a profession like that of medicine by intimate and delicate personal ministration. Traditionally, the learned professions were theology, law and medicine; but some other occupations have climbed, and others may climb, to the professional plane.

Id. (quoting Commonwealth v. Brown, 20 N.E.2d 478, 481 (Mass. 1939)).

Under New Mexico Law, the state courts have apparently added architects to the professions of law and medicine that require expert testimony to establish negligence. See Adobe Masters, Inc. v. Downey, 118 N.M. at 548, 883 P.3d at 134. Moreover, being a general contractor for a large construction project requires great skill, experience, and knowledge. On the other hand, it appears most of the skill and knowledge comes from on-the-job experience, not formal study. While a wonderful career, general contractor does not readily come to mind as a formal profession like law or medicine. Under New Mexico law, the requirements for becoming an general contractor in are not onerous. Only two of the requirements to be licensed as a contractor in New Mexico have to do

with learning or experience: (i) the applicant must show that he has two -- sometimes four -- years of experience in the applicable field within the last ten years, see NMAC § 14.6.6; and (ii) the applicant must take a proficiency test and score at least seventy-five percent, see NMAC § 14.6.3.[3] With appropriate respect to experienced general contractors, the requirements to be within the class of general contractors and to do what general contractors do are less burdensome than the requirements to join a traditional "learned profession."  Furthermore, the Court of Appeals of New Mexico has held in the context of a highway contractor that, in "contractor liability cases . . . the requirement for expert testimony to establish breach of duty is the exception rather than the rule." Cumming v. Nielson's, Inc., 108 N.M. 198, 201, 769 P.2d 732, 735 (Ct. App. 1988).  While the case before the Court is somewhat more complex than that in Cumming v. Nielson's, Inc., the Court has been shown no reason to make an "exception" to New Mexico's general rule that contractor liability cases do not require expert testimony to establish a breach of duty.  While the Court could create a sliding scale for requiring an expert, depending on the complexity of the project, the Court has carefully reviewed the areas upon which Hicks intends to opine, and they do not appear to be extremely complex.[4]  Thus, the Court is bound by New Mexico's general rule of not requiring an expert in contractor cases.  The Court will thus deny LCI2's motion and allow Wheeler Peak's negligence claim to go forward.

---

[3] Other requirements include financial responsibility, an appropriate name, being the proper business entity, and properly filling out the correct application form.  See NMAC § 14.6.3.

[4] The Court also notes that LCI2 does not question Hicks' qualifications as an architect or his general knowledge of construction.  Rather, they argue that the range of knowledge of a general contract and that of an architect are so distinct that an architect could not meaningfully testify as to a general contractor's standard of care.  While the Court recognizes that the two fields are different, the Court finds that Wheeler Peak does not need an expert to establish the general contractor's standard of care and that an architect's testimony will aid the jury in addressing the issues presented.

**IT IS ORDERED** that LCI2's motion for partial summary judgment on Count IV of Wheeler Peak's First Amended Complaint is denied.

                                                                                     _____
                                                                                  UNITED STATES DISTRICT JUDGE

*Counsel*:

Donald A. Walcott
Holly Hart
Kris C. Knutson
Scheuer, Yost & Patterson
Santa Fe, New Mexico

      *Attorneys for Plaintiff and Counter-Defendant Wheeler Peak, LLC*

Scott P. Hatcher
Hatcher & Tebo, P.A.
Santa Fe, New Mexico

      *Attorneys for Proposed Intervenor-Plaintiffs American Hallmark Insurance Company of
        Texas and Clarendon National Insurance Company*

Alan Maestas
Lee Boothby
Maestas Baker Boothby & Warren, P.C.
Taos, New Mexico

-- and --

Tim L. Fields
Samuel L. Winder
Brian K. Nichols
Cristin M. Heyns
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

      *Attorneys for Defendant, Counterclaimaint, and Third-Party Plaintiff
        L.C.I.2, Inc.*

Todd Schwarz
H. Brook Laskey
Bryan Hatherly
Miller Stratvert, P.A.
Albuquerque, New Mexico

>   *Attorneys for Third-Party Defendant and Third-Party Plaintiff*
>     *Donner Plumbing and Heating Inc.*

Robert J. Perovich
Mariposa Padilla Sivage
Tina Muscarella Gooch
Keleher & McLeod
Albuquerque, New Mexico

>   *Attorneys for Third-Party Defendant De La Torre Architects, P.A., A.I.A.*

Steven L. Gonzales
Anita M. Kelley
Silva, Saucedo & Gonzales, P.C.
Albuquerque, New Mexico

>   *Attorney for Third-Party Defendant Parker Excavating, Inc.*

Robert Bruce Collins
Holly R. Harvey
Law Office of Robert Bruce Collins
Albuquerque, New Mexico

>   *Attorneys for Third-Party Defendant JC Constructors, Inc.*

Michael S. Jahner
Yenson, Lynn, Allen & Wosick, P.C.
Albuquerque, New Mexico

-- and --

J. Michael Roberts
Jason R. Scott
Shook Hardy & Bacon, LLP
Kansas City, Kansas

>   *Attorneys for Third-Party Defendant Simplex Grinnell, LP*

Julie J. Vargas
Hunt & Davis, P.C.
Albuquerque, New Mexico

>    *Attorneys for Third-Party Defendants David Born, Carl Davis, Lisa Davis,*
>       *Melissa Deaver-Rivera, Kathy Diklich, Roy Diklich, Joseph Forbess,*
>       *Lisa Forbess, Phyllis Galanthay, Ted Galanthay, Angela Nix, and Kent Nix*